MORGAN, LEWIS & BOCKIUS LLP
John S. Battenfeld, Bar No. 119513
Tuyet T. Nguyen Lu, Bar No. 256431
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:  +1.213.612.2500
Fax:  +1.213.612.2501
john.battenfeld@morganlewis.com
tuyet.nguyen@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
J.P. Schreiber, Bar No. 317829
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:  +1.415.442.1000
Fax:  +1.415.442.1001
jp.schreiber@morganlewis.com

Attorneys for Defendant
TESLA INC., dba TESLA MOTORS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIJAH BAER, JOSHUA BAYANGOS, RONALD GRUEL, ISAIAH HAMPTON, NATHAN JOHNSON, CHANDRASEKAR KUPPUCHAMY, DEREK LEWIS, DESERIE MARTIN, JOSEPH MARTINEZ, MAYRENI MORALES, SHONTAE STEPHENS, SIENNA STEPHENS, RUDY VALDEZ, JATEL VERCHER, and KAYLA WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TESLA MOTORS, INC., a California corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT TESLA, INC. dba TESLA MOTORS, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>[28 U.S.C. §§ 1332, 1441, 1446, and 1453] |

**TO THE CLERK OF THE NORTHERN DISTRICT OF CALIFORNIA AND PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant TESLA INC., dba TESLA MOTORS, INC. ("Defendant" or "Tesla"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California, County of Alameda, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. This removal is based on the following grounds:

## I. PROCEDURAL BACKGROUND.

1. On December 30, 2022, Plaintiffs Elijah Baer, Joshua Bayangos, Ronald Gruel, Isaiah Hampton, Nathan Johnson, Chandrasekar Kuppuchamy, Derek Lewis, Deserie Martin, Joseph Martinez, Mayreni Morales, Shontae Stephens, Sienna Stephens, Rudy Valdez, Jatel Vercher, And Kayla Williams (collectively "Plaintiffs") filed a class action complaint ("Complaint") in the Superior Court of the State of California, County of Alameda, entitled *Elijah Baer, et al., individually, and on behalf of all others similarly situated v. Tesla Motors, Inc.*, a California corporation; and DOES 1 through 10, inclusive, Case No. 22CV024984. On February 23, 2023, Plaintiffs filed the operative First Amended Class & Representative Action Complaint (the "FAC").

2. On April 10, 2023, Plaintiffs served copies of the Summons, original Complaint, FAC, Civil Case Cover Sheet, Notice of Case Management Conference, Order re: Complex Determination Hearing, and Alternative Dispute Resolution Information Packet on the registered agent for Tesla. On April 25, 2023, Plaintiff served a unilateral case management conference statement for a May 1, 2023 case management conference that was taken off-calendar as Defendant had not yet appeared. True and correct copies of these documents are attached hereto as **Exhibit A**. **Exhibit A** constitutes all the pleadings, process, and orders served upon or filed by Tesla in the Superior Court action. On May 10, 2023, Defendant filed an

answer to Plaintiffs' FAC in Los Angeles County Superior Court.  A true and correct copy of this document is attached hereto as **Exhibit B**.

3. The FAC seeks damages and penalties on behalf of a putative class for: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay final wages at termination; (6) failure to provide accurate itemized wage statements; (7) failure to indemnify employees for expenditures; (8) unfair business practices; and (9) civil penalties under the Private Attorneys General Act ("PAGA").  (Ex. A, FAC ¶¶ 61-131).

4. Plaintiffs allege all Causes of Action individually and on behalf of a putative class of current and former employees.  Plaintiffs seek to represent a class defined as "All persons who worked for any Defendants in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent." (Ex. A, FAC ¶ 54).

## II. REMOVAL IS TIMELY.

5. Because Tesla is filing this Notice of Removal within thirty days of service of the FAC, it is timely under 28 U.S.C. §§ 1446(b)(3) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).  No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. DIVISIONAL ASSIGNMENT

6. Plaintiffs each allege they worked for Defendant in Alameda County, California. (Ex. A, FAC ¶¶ 8-22, 28-42). As Alameda is the county where a substantial part of the alleged events or omissions giving rise to the claim occurred, pursuant to LR 3-2(d), assignment of this matter to the San Francisco or Oakland Divisions of the Northern District is therefore appropriate.

IV.   **JURISDICTION**

7. This is a putative class action.[1] (Ex. A, FAC, ¶ 2, Prayer for Relief ¶ 1). Removal under the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and Tesla, (ii) the aggregate number of putative class members in the proposed class is 100 or greater; and (iii) the FAC places in controversy more than $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453.[2] Although Tesla denies Plaintiffs' factual allegations and denies that Plaintiffs—or the class they purport to represent—are entitled to the relief requested, based on Plaintiffs' allegations in the FAC and Prayer for Relief, all requirements for jurisdiction under CAFA have been met in this case.

   A.   **Complete Diversity of Citizenship Exists Between the Parties.**

8. To satisfy CAFA's diversity requirement, a removing party seeking removal must establish only that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

9. For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing

---

[1] Tesla denies, and reserves the right to contest at the appropriate time, that this action can properly proceed as a class action. Tesla further denies Plaintiffs' claims and denies that they can recover any damages.

[2] Tesla denies Plaintiffs' factual allegations and denies that Plaintiffs and members of the putative class are entitled to any relief whatsoever.

1  *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  Evidence of continuing residence
2  creates a presumption of domicile.  *Washington v. Hovensa LLC*, 652 F.3d 340, 395
3  (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir.
4  1994).

5        10.    "An individual is a citizen of the state in which he is domiciled."  *Boon*
6  *v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v.*
7  *Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity
8  of citizenship jurisdiction, citizenship is determined by the individual's domicile at
9  the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l,* 243
10 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir.
11 1986)).  Domicile is determined by "an individual's 1) residence in a state, and 2)
12 his intent to remain indefinitely."  *Boon*, 229 F. Supp. 2d at 1019.  Evidence of
13 continuing residence creates a presumption of domicile.  *Washington v. Hovensa*
14 *LLC*, 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19
15 F.3d 514, 519 (10th Cir. 1994).

16       11.    In their Complaint, Plaintiffs allege that they each were employed by
17 Tesla in Alameda County, California during various respective time periods.  (Ex.
18 1, FAC ¶¶ 8-22).  Plaintiffs further allege that they are currently residents of
19 California—specifically, San Jose, Antioch, Hayward, Salinas, Modesto, Newark,
20 Fremont, Oakland, Milpitas, Victorville, and Lathrop.  (*Id*.)  Accordingly, Plaintiffs
21 have continued to reside in California and are domiciled in California and,
22 therefore, are citizens of California for purposes of removal.  Plaintiffs are not
23 citizen of Delaware or Texas.

24       12.    For CAFA diversity purposes, a corporation is deemed to be a citizen
25 of any state in which it has been incorporated and of any state where it has its
26 principal place of business.  28 U.S.C. § 1332(c)(1).  The "principal place of
27 business" for the purpose of determining diversity subject matter jurisdiction refers
28 to "the place where a corporation's officers direct, control, and coordinate the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANT'S NOTICE OF REMOVAL
TO FEDERAL COURT

DB2/ 45591743.4

corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings . . . ." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

13. Defendant Tesla is a corporation organized under the laws of the State of Delaware. Its principal place of business and corporate headquarters is in Austin, Texas, where its officers direct, control, and coordinate corporate activities.

14. As a result, Tesla is now, and was at the time of the filing of this action, a citizen of the States of Texas and Delaware within the meaning of the Acts of Congress relating to the removal of this action.

15. Therefore, diversity of citizenship exists under CAFA because at least one member of the putative class is, and indeed all Plaintiffs are, a citizen of a state different than Tesla. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

**B.     The Putative Class Has More Than 100 Members.**

16. The FAC alleges claims on behalf of a class defined as "All persons who worked for any Defendants in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent." (Ex. A, FAC ¶ 54).

17. Based on available data, Tesla is informed and believes that it employed at least 19,000 non-exempt, hourly-paid employees in California during the four years preceding the initial complaint's filing. Thus, the putative class contains more than 100 members.

### C. The Amount in Controversy Exceeds $5,000,000.[3]

18. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Because Plaintiffs do not expressly plead a specific amount of class damages, Tesla need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). Tesla's burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554; *see also Jauregui v. Roadrunner Transportation Services, Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's remand to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy" for purposes of CAFA removal, and concluding that "[the defendant's] assumptions regarding the number of affected class members and the violation rate were reasonable for the various relevant claims.")

---

[3] This Notice of Removal addresses the nature and amount of damages that the FAC places in controversy. Tesla refers to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Tesla maintains that each of Plaintiffs' claims lack merit, and that Tesla is not liable to Plaintiffs or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiffs will or could actually recover any damages based upon the allegations contained in the FAC or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Tesla's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In addition, Tesla denies that this case is suitable for class treatment.

19. "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D. Cal. April 28, 2015) (citation omitted). *See also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy."). The ultimate inquiry is what amount a complaint places "in controversy," not what a defendant may actually owe in damages. *LaCross*, 775 F.3d at 1202 (citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy"). *See also Jauregui*, 28 F.4th at 993 ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved.")

20. Under *Dart Cherokee*, a removing defendant is not required to submit evidence supporting its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("a removing defendant's notice of removal **need not contain evidentiary submissions** but only plausible allegations of jurisdictional elements.") (internal quotations omitted) (emphasis added). The removal allegations "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'" *Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019)). Where the plaintiff "could have, but did not, make more specific

allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Id.* at *3. As detailed below, Tesla plausibly alleges that the amount in controversy exceeds $5 million based on Plaintiffs' sweeping allegations, and that the Court has jurisdiction pursuant to CAFA. When the claims of the putative class members in the present case are aggregated, their claims put into controversy over $5 million in potential damages. 28 U.S.C. § 1332(d)(2).

21. Although Tesla denies Plaintiffs' factual allegations and denies that they or the class or subclasses they seek to represent are entitled to the relief for which they have prayed, Plaintiffs' allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[4]

22. As explained above, Plaintiffs seek to represent a putative class of at least 19,000 current and former employees. Tesla has reviewed certain data concerning the putative class that Plaintiffs seek to represent. Based on the allegations in the FAC, Plaintiffs have put well over $5 million in controversy as set forth below, and CAFA removal is appropriate.

    **1.**     **Plaintiffs' Third Cause of Action for Failure to Provide Meal Periods Places At Least $22,324,200 in Controversy.**

---

[4] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiffs' FAC. Tesla's references to specific damage amounts and citation to comparable cases are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Tesla maintains that each of Plaintiffs' claims is without merit and that Tesla is not liable to Plaintiffs or any putative class member. Tesla expressly denies that Plaintiffs or any putative class member are entitled to recover any of the penalties sought in the FAC. In addition, Tesla denies that liability or damages can be established on a class-wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiffs will or could actually recover any damages based upon the allegations contained in the FAC or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Tesla's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 45591743.4

9

DEFENDANT'S NOTICE OF REMOVAL
TO FEDERAL COURT

23. In support of Plaintiffs' third cause of action for failure to provide meal periods, Plaintiffs allege that "[t]hroughout the statutory period, Defendants wrongfully failed to provide Plaintiffs and the Class with their legally mandated 30-minute, uninterrupted, and duty-free meal period in a manner required by law *(and also including but not limited to failing to provide Plaintiffs and the Class the opportunity to leave the work premises to take meal periods)*." (Ex. A, FAC ¶ 46) (emphasis added). Plaintiffs further allege that "Defendants also continued to assert control over Plaintiffs and the Class by, among other things, requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory meal periods, or by denying Plaintiffs and the Class permission to take a meal period under the conditions required by law, and without properly compensating Plaintiffs and the Class for meal periods that were not provided as required by law. Defendants also never informed Plaintiffs of their right to, nor permitted them to take, a second meal period when Plaintiffs worked at least ten hours of work in a workday and otherwise unlawfully pressured them to waive such breaks." (*Id*). The FAC alleges: "By their failure to permit and authorize Plaintiffs, the Class, and the Aggrieved Employees to take all meal periods as alleged above (or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted meal periods), Defendants willfully violated the provisions of California Labor Code § 226.7 and the applicable Wage Orders." FAC ¶ 82). The FAC asserts: "Under California law, Plaintiffs, the Class, and the Aggrieved Employees are entitled to be paid one hour of additional wages for each workday he or she was not provided with all required meal period(s), plus interest thereon." FAC, ¶ 83 The FAC alleges that Tesla failed to pay Plaintiffs and Class Members this additional hour of pay when required meal periods were not provided. (Ex. A, FAC, ¶ 5(b)).

24.     Tesla's review of data showed at least 8,700,000 shifts of over five hours were worked from December 30, 2018 through April 26, 2023 by non-exempt hourly employees of Tesla in California.

25.     Based on Plaintiffs' allegations in the FAC, including that Tesla's "unlawful" policy systematically subjected all putative class members to unlawful control during meal periods by "failing to provide [them] the opportunity to leave the work premises to take meal periods," and "that Defendants made it impossible or impracticable to take these uninterrupted meal periods", Plaintiffs are alleging theories of meal period violations in the FAC that support an assumption of damages sought based on a 100% violation rate for meal period claims as to non-exempt employees' shifts of more than five hours, when calculating the amount placed in controversy as to this class claim. *See Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 276 (2016) (employer may not impose restrictions during meal breaks that "interfere with the employee's ability to use the time for his or her own purposes"); *see also Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (upholding application of 100% violation rate and explaining that "[i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly adopted and maintained, then the company may potentially violate the law in each and every situation where those policies are applied"); *Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) (finding employer's assumed 100% violation rate reasonably grounded in complaint alleging a "systematic, company-wide policy"). However, as set forth below Tesla uses a more conservative lower alleged violation rate for purposes of calculating the amount in controversy at this time.

26.     Tesla's review of data shows that between December 30, 2018 and April 26, 2023, the alleged class liability based on a four-year statute of

limitations,[56] putative class members worked at least 8,713,694 shifts of over five hours. At all times during the alleged liability period, Defendant paid its hourly employees at least (and on average well over) minimum wage; for purposes of the calculations in this Removal, Defendant is conservatively utilizing a blended minimum wage of $12.83 per hour rate of pay based on the annual increases to the California minimum wage. Even if Tesla did not assume a 100% violation rate as alleged by Plaintiffs, but rather assumed only a 20% alleged violation rate, this would mean that just Plaintiffs' meal period claim places in controversy at least **$22,324,200** (8,700,000 shifts x .2 x $12.83 for one hour of claimed premium pay per shift).

### 2. Plaintiffs' Fourth Cause of Action for Failure to Authorize and Permit Rest Periods Puts at Least $22,580,800 in Controversy.

27. Plaintiffs also allege that "[t]hroughout the statutory period, Defendants have wrongfully failed to authorize and permit Plaintiffs and the Class to take legally compliant rest periods in a manner required by law (and also including but not limited to failing to authorize and permit Plaintiffs and the Class the opportunity to leave the work premises to take rest periods). Defendants regularly required Plaintiffs, the Class, and the Aggrieved Employees to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, uninterrupted, duty-free rest period for every four hours of work (or major fraction of four hours), or without compensating Plaintiffs, the Class, and the Aggrieved Employees for rest periods that were not

---

[5] A claim for meal period premiums carries a three-year statute of limitations. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007). However, because of his Eighth Cause of Action for Unfair Business Practices, Plaintiffs claim that Tesla's alleged failure to provide legally compliant meal periods is subject to a four-year statute of limitations. *See* Ex. A, FAC, ¶ 54.

[6] Plaintiffs allege that the liability period is extended by an additional 178 days due to tolling of the statute of limitations by the Judicial Council of California's Emergency Order No. 9(a) in response to the COVID-19 pandemic. However, Tesla maintains that this tolling does not apply to this case.

authorized or permitted. Instead, Defendants continued to assert control over Plaintiffs, the Class, and the Aggrieved Employees by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory rest periods, or by denying Plaintiffs, the Class, and the Aggrieved Employees permission to take a rest period." (Ex. A, FAC ¶ 47).  The FAC alleges: "By their failure to permit and authorize Plaintiffs and the Class to take rest periods as alleged above (or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted rest periods), Defendants willfully violated the provisions of California Labor Code § 226.7 and the applicable Wage Orders."  FAC ¶ 85.(*Id.*)

28.  The FAC alleges that Plaintiffs and the Class "are entitled to receive one hour of premium wages rate for each workday he or she was not provided with all required rest break(s)."[7]  (Ex. A, FAC ¶ 87).  The FAC alleges that Tesla failed to pay Plaintiffs and the Class this additional hour of pay when required rest periods were not provided.  (Ex. A, FAC, ¶ 5(c)).

29.  Based on Plaintiffs' allegation that Tesla's policy subjected all putative class members to unlawful control during rest periods, including by "failing to authorize and permit [them] the opportunity to leave the work premises to take rest periods," and "that Defendants made it impossible or impracticable to take these uninterrupted rest periods", Plaintiffs are alleging theories of rest period violations in the FAC that support an assumption of damages sought based on a 100% violation rate for rest period claims as to all shifts of four hours or more when calculating the amount placed in controversy as to this class claim. (Ex. A, FAC, ¶ 47) (alleging entitlement to a 10 minute rest period for shifts of at least four hours or a major fraction thereof); see *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th at 269

---

[7] A claim for rest period premiums carries a three-year statute of limitations. *Murphy*, 40 Cal. 4th at 1099.  However, because of his Eighth Cause of Action for Unfair Business Practices, Plaintiffs claim that Tesla's alleged failure to provide legally compliant rest periods is subject to a four-year statute of limitations.  See Ex. A, FAC, ¶ 54.

("during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time."); *Mejia*, 2015 WL 2452755, at *4 (upholding application of 100% violation rate and explaining that "[i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly adopted and maintained, then the company may potentially violate the law in each and every situation where those policies are applied"); *Ford*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) (finding employer's assumed violation rate reasonably grounded in complaint alleging a "systematic, company-wide policy").  However, as set forth below Tesla uses a more conservative lower alleged violation rate for purposes of calculating the amount in controversy at this time.

30.  Tesla's review of data shows that between December 30, 2018 and April 26, 2023, non-exempt putative class members worked at least 8,800,000 shifts of at least 4 hours.  Even if Tesla did not assume a 100% violation rate as alleged by Plaintiffs but rather assumed only a 20% alleged violation rate, this would mean that Plaintiffs' rest period claim places in controversy at least **$22,580,800** (8,800,000 shifts x .2 x $12.83 for one hour of claimed premium pay per shift).

### 3. Plaintiffs' Fifth Cause of Action for Failure to Timely Pay Final Wages at Termination Places at Least $14,748,410 in Controversy.

31.  The FAC alleges that "during the relevant time period, Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code §§ 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." FAC ¶ 91.  Plaintiffs allege that "Defendants' failure to pay those Class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code §§ 201 and 202." (Ex. A, FAC ¶ 91). Accordingly, Plaintiffs allege that they and the putative class

members are "entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to thirty (30) days maximum pursuant to California Labor Code § 203." FAC ¶ 92.

32. During the three-year statute of limitations period applicable to a Section 203 claim, Tesla is informed and believes that at least 4,790 full-time non-exempt employees in California who separated their employment with Tesla more than 30 days before the present date. The FAC alleges that putative class members' "final paychecks did not include payment for all expenditures, minimum wages, straight time wages, overtime wages, meal period premium wages, and rest period premium wages owed to them by Defendants at the conclusion of their employment." (Ex. A, FAC, ¶¶ 48). The FAC does not allege that these amounts have been paid, but rather seeks them as damages for all alleges class members. Based on Plaintiffs' allegations, it is appropriate to use a 100% violation rate for waiting time penalties to calculate the amount in controversy. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."). *See also Jauregui*, 28 F.4th at 994 ("But it was not unreasonable for [defendant] to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty.") (emphasis in original); *Crummie v. Certified Safety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) ("Crummie's theory. . . is that putative class members were owed (and are still owed) pay for overtime and missed meal and rest breaks, even if their final paychecks were otherwise timely delivered. Thus, it is completely reasonable to assume waiting time penalties accrued to the thirty-day limit because of those unpaid sums.").

33.     Using the average blended minimum wage rate of $12.83, the FAC puts in controversy Labor Code Section 203 waiting time penalties of $3,079 per terminated employee ($12.83 x 8 hours per day x 30 days), or at least **$14,748,410** in the aggregate ($3,079 x 4,790 employees).

### 4.     The Amount in Controversy Exceeds $5 Million.

34.     Aggregating the figures above for these causes of action, Plaintiffs' alleged amount in controversy is at least **$59,653,410** ($22,324,200 + $22,580,800 + $14,748,410) based on the allegations in the claims discussed above.  Thus, the CAFA $5 million requirement is satisfied based on these claims alone, even without the need to assess the value of Plaintiffs' First Cause of Action (failure to pay minimum and straight time wages), Second Cause of Action (failure to pay overtime wages), Sixth Cause of Action (failure to provide accurate itemized wage statements), or Seventh Cause of Action (failure to indemnify employees for expenditures), or Eighth Cause of Action (claim for violation of California Business & Professions Code).

### 5.     Plaintiffs' Request for Attorneys' Fees Places Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.

35.     Plaintiffs seek to recover attorneys' fees under various provisions of the Labor Code, including section 226.  (Ex. A, FAC ¶¶ 70, 78, 94, 102, 107, 124, 131; Prayer for Relief, ¶¶ 8, 13, 18, 23, 28, 34, 39, 44, 50).  Future attorneys' fees are properly included in determining the amount in controversy, including for class actions seeking fees under Labor Code Section 226.  *See Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 793–94 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy.").  Courts in the Ninth Circuit "have treated a potential 25% fee award as reasonable" in wage and hour class actions removed under CAFA.  *See Anderson*, 2020 WL 7779015, at *4; *see also* <u>Moreno v. Pretium</u>

*Packaging, L.L.C.*, No. 8:19-CV-02500-SB-DFM, 2021 WL 3673845, at *2 (C.D. Cal. Aug. 6, 2021) (granting final approval of 33% fee award for Plaintiffs' firm Wilshire Law Firm in wage-and-hour class action).

36. Although Tesla denies Plaintiffs' claim for attorneys' fees, inclusion of potential future attorneys' fees for purposes of removal adds another $14,913,352 in controversy (25% of $59,653,410), bringing the total amount in controversy to at least **$74,566,762**.

37. Therefore, although Tesla has plausibly alleged that the amount in controversy without attorneys' fees exceeds $5,000,000, the inclusion of attorneys' fees as allowed by Ninth Circuit law further increases the amount in controversy above the minimum threshold for CAFA jurisdiction.

**V.   VENUE**

38. This action was originally filed in the Superior Court for the County of Alameda. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action is pending.

**VI.   NOTICE**

39. Tesla will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

**VII.   CONCLUSION**

40. Based on the foregoing, Tesla requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Tesla respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

| | | |
|---|---|---|
| 1 | Dated: May 10, 2023 | MORGAN, LEWIS & BOCKIUS LLP |
| 2 | | |
| 3 | | By */s/ John S. Battenfeld* |
| 4 | | John S. Battenfeld<br>Tuyet T. Nguyen Lu<br>J.P. Schreiber |
| 5 | | |
| 6 | | Attorneys for Defendant<br>TESLA, INC. dba TESLA<br>MOTORS, INC. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 45591743.4

18

DEFENDANT'S NOTICE OF REMOVAL
TO FEDERAL COURT

# PROOF OF SERVICE BY MAIL

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 300 South Grand Avenue, Twenty-Second Floor, Los Angeles, CA 90071-3132. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service.

On **May 10, 2023**, I served the following document as set forth below:

**DEFENDANT TESLA, INC. dba TESLA MOTORS, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT**

| ☒ | **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |
|---|---|

*Attorneys for Plaintiffs*
John G. Yslas
Aram Boyadjian
Andrew Sandoval
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010

Executed on **May 10, 2023**, at Los Angeles, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
**Lucy Mata**