John G. Yslas (SBN 187324)
jyslas@wilshirelawfirm.com
Jeffrey C. Bils (SBN 301629)
jbils@wilshirelawfirm.com
Aram Boyadjian (SBN 334009)
aboyadjian@wilshirelawfirm.com
Andrew Sandoval (SBN 346996)
andrew.sandoval@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIJAH BAER, JOSHUA BAYANGOS, RONALD GRUEL, ISAIAH HAMPTON, NATHAN JOHNSON, CHANDRASEKAR KUPPUCHAMY, DEREK LEWIS, DESERIE MARTIN, JOSEPH MARTINEZ, MAYRENI MORALES, SHONTAE STEPHENS, SIENNA STEPHENS, RUDY VALDEZ, JATEL VERCHER, and KAYLA WILLIAMS, individually, and on behalf of all others similarly situated, and on behalf of the State of California and other aggrieved persons, <br><br> *Plaintiffs,* <br><br> v. <br><br> TESLA MOTORS, INC., a California corporation, and DOES 1 through 10, inclusive, <br><br> *Defendants.* | Case No. 23-cv-02274-YGR <br><br> [*Assigned to the Hon. Yvonne Gonzalez Rodgers*] <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER REMANDING ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:     July 18, 2023 <br> Time:     2:00 pm <br> Courtroom: 1 <br><br> State Action Filed:  December 30, 2022 <br> State FAC Filed:    February 23, 2023 <br> Removal Date:      May 10, 2023 <br><br> [*Filed concurrently with:  (Proposed) Order*] <br><br> Trial date:      Not set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 18, 2023 at 2:00 p.m., or as soon thereafter as the matter can be heard in Courtroom 1 of the above-referenced court, located at Oakland Federal District Courthouse, 1301 Clay Street, Courtroom 1, Fourth Floor, Oakland, California 94612. Plaintiffs, individually and on behalf of all others similarly situated, will and hereby do move this Court for an Order remanding the instant Action back to the state court in which it was originally filed. This Motion will be based on this Notice and the Memorandum of Points and Authorities filed concurrently herewith, the Proposed Order lodged concurrently herewith, the complete files and records in this action, and all other matters and evidence that may be presented at the hearing on this Motion.

Plaintiffs move this Court to remand this Action back to the State Court where it belongs, and that the Clerk of the Court send a certified copy of the Order to the clerk of the State Court where the Action was originally filed, because this Court lacks subject matter jurisdiction over the Action under Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), on the grounds that Defendant cannot demonstrate that the amount-in-controversy exceeds $5,000,000.

Respectfully submitted,

Dated: June 9, 2023            **WILSHIRE LAW FIRM**

By: */s/ Jeffrey C. Bils*
_____
Jeffrey C. Bils

Attorneys for Plaintiffs

1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................... i

TABLE OF AUTHORITIES.................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES........................................1

I.    INTRODUCTION AND BACKGROUND ...................................................1

II.   DEFENDANT MUST SHOW BY PREPONDERANCE OF THE
      EVIDENCE THAT FEDERAL REMOVAL JURISDICTION EXISTS........2

III.  NO CREDIBLE, SUMMARY JUDGMENT-TYPE EVIDENCE SHOWS
      THE REQUISITE $5 MILLION AMOUNT-IN-CONTROVERSY .............4

      A.   Defendant's Meal Period and Rest Break Violation Calculations Rely
           on Speculative Assumptions and Are Thus Unreasonable ......................6

      B.   Defendant's Calculation Regarding Failure to Pay Wages Due at
           Termination is Arbitrary and Unsupported.............................................11

      C.   Defendant's Attempt to Balloon the Amount in Controversy with
           Unsubstantiated Attorneys' Fees is Improper.........................................14

      D.   Defendant's Authorities Are Unavailing .................................................15

IV.   CONCLUSION......................................................................................17

PLAINTIFFS' NOTICE OF MOTION AND                    Case No. 23-cv-02274-YGR
MOTION FOR ORDER REMANDING ACTION

# TABLE OF AUTHORITIES

**CASES**

*Abrego Abrego v. Dow Chem Co.,* 443 F.3d 676 (9th Cir. 2006)............................. 3

*Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) ...................... 4, 6

*Arias v. Shyft Grp. GTB, LLC*, No. CV 23-1582-JFW(DFMX), 2023 WL 3559311,
at *2-3 (C.D. Cal. May 17, 2023) ...................................................... 1, 4

*Armstrong v. Ruan Trans. Co.*, EDCV 16-1143-VAP (SPx), 2016 WL 6267931, at
*3 (C.D. Cal. Oct. 25, 2016) ................................................................. 9

*Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014)............. 6

*Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016) ...................................... 15

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)........................................... 6

*Crummie v. Certified Safety, Inc.*, No. 17-CV-03892-RS, 2017 WL 4544747 (N.D.
Cal. Oct. 11, 2017)................................................................................. 17

*Dart Cherokee Basin Operating Co., LLC v. Owens* ["*Dart Cherokee*"] 574 U.S. 81
(2014)....................................................................................................... 3

*Dobbs v. Wood Grp. PSN, Inc.*, 201 F.Supp.3d 1184 (E.D. Cal. 2016).......... 4, 6, 13

*Duran v. Allegis Glob. Sols., Inc.*, 2021 WL 3281073, at *3
(N.D. Cal. Aug. 2, 2021)...............................................................8, 10, 14

*Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. July 10, 2014) .............. 15

*Freeman v. Mercy Servs. Corp.*, No. 2:16-cv-01151-TLNKJN, 2017 WL 2572428,
at *3-4 (E.D. Cal., June 14, 2017)........................................................... 9

*Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018) .............. 14

*Garibay v. Archstone Cmtys. LLC*, 539 Fed. Appx. 763
(9th Cir. Aug. 27, 2013).................................................................. 12, 14

*Garza v. Brinderson Constructors, Inc.,* 178 F.Supp.3d 906 (N.D. Cal. 2016)........ 7

*Gaus v. Mile, Inc.*, 980 F.2d 564 (9th Cir. 1992)..................................................... 2

*Gonzalez v. H & M Hennes Mauritz L.P. et al.*, 2022 WL 179292, at *4 (C.D. Cal.
Jan. 20, 2022)................................................................................... 1, 9

PLAINTIFFS' NOTICE OF MOTION AND                          Case No. 23-cv-02274-YGR
MOTION FOR ORDER REMANDING ACTION

1  *Great N. R. Co. v. Alexander*, 246 U.S. 276 (1918) ................................... 2

2  *Harris v. KM Indus., Inc.*, 980 F.3d 694 (9th Cir. 2020) ............................ 3

3  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193 (9th Cir. 2015) ................... 3, 4, 7

4  *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989 (9th Cir. 2022) .............. 5

5  *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989 (9th Cir. 2022) 16

6  *Jauregui v. Roadrunner Transportation Servs., Inc.*, No. 2:21-CV-04657-RGK-PD,

7      2021 WL 4100286, *5 (C.D. Cal. Sept. 8, 2021) ................................. 16

8  *Koreisz v. On Q Fin., Inc.*, 2018 WL 6567694, at *3

9      (C.D. Cal. Dec. 12, 2018) ................................................ 1, 9

10  *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199 (E.D. Cal. 2008) .............. 3

11  *Lacasse v. USANA Health Sci., Inc.*, 2021 WL 107143, at *3

12      (E.D. Cal. Jan. 12, 2021) ............................................... 11

13  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200 (9th Cir. 2015) .................... 6, 13

14  *Lewis v. Verizon Commc'ns., Inc.,* 627 F.3d 395 (9th Cir. 2010) ................... 3

15  *Luther v. Countrywide Home Loans Servicing, LP,* 533 F.3d 1031 (9th Cir. 2008). 2

16  *Munoz v. Central Parking Sys., Inc.*, No. CV 10-6172, 2010 WL 3432239, at *2

17      (C.D. Cal. Aug. 20, 2010) ................................................. 9

18  *Ortega v. ITS Techs. & Logistics, LLC*, 2021 WL 4934978, at *4

19      (C.D. Cal. Oct. 22, 2021) ............................................... 15

20  *Pac. Mar. Ass'n v. Mead*, 246 F.Supp.2d 1087 (N.D. Cal. 2003) .................... 2

21  *Peters v. TA Operating LLC*, No. EDCV221831JGBSHKX, 2023 WL 1070350, at

22      *5 (C.D. Cal. Jan. 26, 2023) ........................................ 1, 4, 6

23  *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975 (9th Cir. 2013) ............. 3

24  *Ryan v. Mission Treatment Servs., Inc.*, 2022 WL 4331093, at *3

25      (C.D. Cal. Sept. 19, 2022) ............................................. 1, 8

26  *Salazar v. Johnson & Johnson Consumer Inc.,* 2018 WL 4560683, at *3 (C.D. Cal.

27      Sept. 19, 2018) ......................................................... 9

28

*Sanchez v. Vanderlande Indus., Inc.*, No. CV 23-531-JFW(MAAX), 2023 WL
    2862288, at *4 (C.D. Cal. Apr. 10, 2023) ............................................................... 1

*Serrano v. 180 Connect, Inc.*, 478 F.3d 1018 (9th Cir. 2007) ...................................... 3

*Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373 (9th Cir. 1977) .................. 4

*Smith v. Diamond Resorts Mgmt.*, 2016 WL 356020, at * 5 (C.D. Cal. 2016)... 5, 14

*Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002) ................................. 2

*Toribio v. ITT Aerospace Controls LLC*, 2019 WL 4254935, at *3
    (C.D. Cal. Sept. 5, 2019) ..................................................................... 1, 9, 17

*Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004) .......................................... 2

*Vanegas v. DH Express (USA), Inc.*, 2021 WL 1139743, at *4
    (C.D. Cal. Mar. 24, 2021) ............................................................... 1, 9, 11, 17

*Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F.Supp.3d 932
    (C.D. Cal. 2014) .................................................................................. 3, 13

*Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13 cv- 01092-LJO-JLT,
    2013 WL 5274283, at *6 (C.D. Cal. Sept. 17, 2013) .................................................. 9

*Whitaker v. U.S. Renal Care, Inc.*, No. CV 17- 2661-R, 2017 WL 3412203, at *2
    (C.D. Cal. Aug. 8, 2017) ............................................................................ 9

STATUTES

28 U.S.C. § 1332(d) .......................................................................................... 1

28 U.S.C. § 1441(a)........................................................................................... 2

Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) ............ *passim*

PLAINTIFFS' NOTICE OF MOTION AND                     Case No. 23-cv-02274-YGR
MOTION FOR ORDER REMANDING ACTION

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION AND BACKGROUND

3
4
5
6
7
8
9

Court after court in this Circuit has held that a removing defendant cannot establish the requisite amount-in-controversy for subject-matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA")[1] merely by "plucking a violation rate out of the air and calling it reasonable"[2] — yet this is precisely what Defendant Tesla Motors, Inc. ("Defendant" or "Tesla") attempts to do here. Worse still, Defendant removes this Action on the basis of language that is not found in Plaintiffs' First Amended Complaint ("FAC") [Dkt. No. 1-1].

10
11
12
13
14
15
16

This year alone, in two Central District of California cases, the Court has remanded class actions after determining that the limiting language in the operative complaint — each similar to the FAC here, and each filed by the same Plaintiffs' counsel — did not support the defendant's assumed violations rates. *See Arias v. Shyft Grp. GTB, LLC*, No. CV 23-1582-JFW(DFMX), 2023 WL 3559311, at *2-3 (C.D. Cal. May 17, 2023); *Peters v. TA Operating LLC*, No. EDCV221831JGBSHKX, 2023 WL 1070350, at *5 (C.D. Cal. Jan. 26, 2023).

17
18
19
20
21

In its Notice of Removal ("NOR") [Dkt. No. 1], Defendant strains unsuccessfully to meet the $5 million threshold by assuming unfounded violation rates just as in these previously remanded actions. Specifically, Defendant asserts that ***100% of Class members*** whose employment was terminated more than 30 days before the present date are owed 100% of the potential waiting-time penalties under

22

23

[1] 28 U.S.C. §§ 1332(d) .

24
25
26
27
28

[2] *See, e.g., Sanchez v. Vanderlande Indus., Inc.*, No. CV 23-531-JFW(MAAX), 2023 WL 2862288, at *4 (C.D. Cal. Apr. 10, 2023); *Ryan v. Mission Treatment Servs., Inc.*, 2022 WL 4331093, at *3 (C.D. Cal. Sept. 19, 2022) (quoting *Gonzalez v. H & M Hennes Mauritz L.P. et al.*, 2022 WL 179292, at *4 (C.D. Cal. Jan. 20, 2022)); *see also Toribio v. ITT Aerospace Controls LLC*, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019); *Vanegas v. DH Express (USA), Inc.*, 2021 WL 1139743, at *4 (C.D. Cal. Mar. 24, 2021); *Koreisz v. On Q Fin., Inc.*, 2018 WL 6567694, at *3 (C.D. Cal. Dec. 12, 2018).

1

California Labor Code section 203. [NOR, ¶ 33.] Additionally, Defendant asserts that Class members suffered meal period violations and rest break violations during 20% of eligible shifts. [NOR, ¶¶ 26, 30.]

Defendant offers nothing to evidence its wholly unsubstantiated and plainly unreasonable assumptions, including the violation rates at issue. Therefore, Defendant cannot meet the requisite $5 million amount-in-controversy to establish jurisdiction under CAFA, and this Court must remand.

## II.   DEFENDANT MUST SHOW BY PREPONDERANCE OF THE EVIDENCE THAT FEDERAL REMOVAL JURISDICTION EXISTS

By statute, removal is proper when the federal courts have original jurisdiction over an action brought in state court. *See* 28 U.S.C. § 1441(a). Because the right to remove an action to federal court on the basis of diversity of citizenship is "a creature of statute," the long-standing rule is that "a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 28-29 (2002) (quoting *Great N. R. Co. v. Alexander*, 246 U.S. 276, 280 (1918)).

The burden of establishing grounds for federal jurisdiction rests with the party seeking removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). The removing party must prove, by a preponderance of evidence, actual facts necessary to support the petition for removal. *See Gaus v. Mile, Inc.*, 980 F.2d 564, 566-567 (9th Cir. 1992); *accord Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) (holding that the "defendant seeking removal … has the burden to establish that removal is proper and any doubt is resolved against removability"). On a motion for remand, the non-moving party must identify "a legitimate source of the court's jurisdiction," and "[d]isputed questions of fact and ambiguities in the controlling law must be resolved in favor of the remanding party." *Pac. Mar. Ass'n v. Mead*, 246 F.Supp.2d 1087, 1089 (N.D. Cal. 2003).

Congress enacted CAFA, a statute specifying grounds for removal of state

PLAINTIFFS' NOTICE OF MOTION AND                          Case No. 23-cv-02274-YGR
MOTION FOR ORDER REMANDING ACTION

court class action litigation to federal court, intending that it be applied in harmony with this general rule. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("[When enacting CAFA], Congress intended to maintain the historical rule that it is the proponent's burden to establish a prima facie case of removal jurisdiction"). Under CAFA, "the burden of establishing removal jurisdiction is, as it was before CAFA, on the party wishing to see the case in federal court." *Lewis v. Verizon Commc'ns., Inc.,* 627 F.3d 395, 399 (9th Cir. 2010) (citing *Abrego Abrego v. Dow Chem Co.,* 443 F.3d 676, 685 (9th Cir. 2006)); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1206 (E.D. Cal. 2008) ("[T]he removing party bears the burden of establishing federal jurisdiction under the CAFA …").

"A defendant seeking removal of a putative class action must demonstrate, ***by a preponderance of the evidence***, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (emphasis added); *see also Dart Cherokee Basin Operating Co., LLC v. Owens* ["*Dart Cherokee*"] 574 U.S. 81, 89 (2014) (holding that a defendant asserting removal jurisdiction ***must*** proffer "[e]vidence establishing the amount [in controversy]" when "the plaintiff contests, or the court questions, the defendant's allegations"). The Ninth Circuit has held on more than one occasion that "mere speculation and conjecture, with unreasonable assumptions" cannot support removal jurisdiction. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197-1198 (9th Cir. 2015); *see also Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020); *Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F.Supp.3d 932, 982 (C.D. Cal. 2014) (ruling that a defendant may not "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction."). To the extent that the proponent of removal must resort to assumptions in its "chain of reasoning" supporting its calculation of the total amount-in-controversy, such assumptions "cannot be pulled from thin air, but need some reasonable ground underlying them." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F.Supp.3d

PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR ORDER REMANDING ACTION                    Case No. 23-cv-02274-YGR

1184, 1188 (E.D. Cal. 2016) (quoting *Ibarra*, 775 F.3d at 1199); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

### III. NO CREDIBLE, SUMMARY JUDGMENT-TYPE EVIDENCE SHOWS THE REQUISITE $5 MILLION AMOUNT-IN-CONTROVERSY

To establish CAFA jurisdiction, Defendant must prove, *inter alia*, that the aggregate amount-in-controversy exceeds $5,000,000, exclusive of interest and costs.  It has failed to do so because it has only pulled assumed violation rates from thin air.

"In determining the amount in controversy, courts first look to the complaint." *Ibarra*, *supra*, 775 F.3d at 1197. If the pleading does not facially specify an amount-in-controversy, the removing party "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1977)). This prevents a defendant from attempting to establish federal jurisdiction "by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197-1198. Instead, "[w]here the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." *Dobbs*, *supra*, 201 F.Supp.3d at 1188. In short, any assumptions made by Defendant ***"cannot be pulled from thin air but need some reasonable ground underlying them."*** *Ibarra*, *supra*, 775 F.3d at 1199; *see also Peters, supra,* 2023 WL 1070350, at \*5 (remanding after determining that the limiting language in the complaint — similar to the FAC in this instant action and filed by the same Plaintiffs' counsel — did not support the defendant's assumed violations rates, and noting, "what matters is the depth of the factual support provided by a defendant and the chain of reasoning it uses to reach its estimate"); *see also Arias, supra,* 2023 WL 3559311, at \*2-3 (remanding after determining that the limiting language in the complaint — similar to the FAC in this instant action, filed by the same Plaintiffs' law firm — did not

4

support the defendant's assumed violations rates).

Where "a defendant provide[s] *no* evidence or clearly inadequate evidence supporting its valuation for a claim," the Ninth Circuit has held it "might be appropriate for a district court to assign that claim a $0 value." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *Smith v. Diamond Resorts Mgmt.,* 2016 WL 356020, at * 5 (C.D. Cal. 2016) (rejecting defendant's violation rate of one hour of overtime per week because defendants failed to show how often plaintiffs and class members performed overtime work).

Here, Plaintiffs' FAC does not specify an amount of damages. [*See generally* FAC, Dkt. No. 1-1.] Thus, to overcome Plaintiffs' challenge, Defendant must show by a preponderance of the evidence that the amount-in-controversy is satisfied (*i.e.*, that it is more likely than not that the amount-in-controversy exceeds $5,000,000). Providing evidence should not be particularly difficult for Defendant, especially because it is required under California law to create and maintain wage records that could be used to calculate an amount-in-controversy in this wage-and-hour class action. *See*, *e.g.*, Cal. Lab. Code § 226(a). Yet Defendant presents **no** evidence supporting its purported amount-in-controversy. [*See generally* NOR, Dkt. No. 1.] Defendant submits no evidence outside the FAC, no affidavits or declarations, no summary judgment-type evidence at all relevant to the amount-in-controversy at the time of removal. Defendant fails to proffer a basis in any data whatsoever for the variables used in calculating the alleged amount-in-controversy, not for the alleged average hourly rate of pay, the alleged average number of hours worked per day, the alleged number of class members, the alleged violation rates for meal period and rest break violations, or the alleged amount of penalties class members are entitled to under California Labor Code section 203. [*Id.*]

As such, Defendant's assumed violation rates lack factual support, and the clear weight of decisional authority favors discounting and "zeroing out" its unfounded and unsupported calculations. *See Jauregui*, *supra*, 28 F.4th at 994. Even

if the Court looks past Defendant's non-existent evidence, Defendant **still** fails to establish the amount-in-controversy via any reasonable chain of assumptions. The question of whether a removing defendant's assumptions are reasonable "generally does not rest on whether the defendant has picked a low enough number." *Peters, supra*, 2023 WL 1070350, at \*5.  Even "a 1% violation rate [may be] unreasonable …; what matters is the depth of the factual support provided by a defendant and the chain of reasoning it uses to reach its estimate." *Id.*  As such, the Court should reject ***any*** assumed violation rate absent evidentiary support.

A.   <u>**Defendant's Meal Period and Rest Break Violation Calculations**</u>
     <u>**Rely on Speculative Assumptions and Are Thus Unreasonable**</u>

In its Notice of Removal, Defendant quotes purported language from the FAC that is not actually in the FAC. As such, Defendant's amount-in-controversy calculation ***<u>directly contradicts the plain language of the First Amended Complaint</u>***. Plaintiffs are "'the master of the claim' and may avoid federal jurisdiction by pleading different facts." *Arreola v. Finish Line*, 2014 WL 6982571, at \*4 (N.D. Cal. Dec. 9, 2014) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Thus, "[a]n assumption may be reasonable *if it is founded on the allegations of the complaint*." *Arias*, *supra*, 936 F.3d at 925 (emphasis added).

Defendant must demonstrate that its method of calculation is based on a representative sample from admissible data, from which it "extrapolate[s] ... for the entire class." *Dobbs*, *supra*, 201 F.Supp.3d at 1189 (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202-03 (9th Cir. 2015). In *Dobbs*, the complaint alleged that the defendant violated Labor Code Sections both "regularly" and as a "pattern and practice." There, the defendant submitted two reports as summary-judgement-type evidence to support its contention that the language in the complaint supported the alleged amount-in-controversy. However, *Dobbs* concluded that the evidence lacked any statistical analysis or extrapolated calculations. *Id.* As such, the evidence did not justify the defendant's unreasonable assumptions and its purely speculative amount

6

in controversy. *Id*.  Here, Defendant has not even provided an evidentiary basis for its raw assumptions devoid of analysis or extrapolation.

Instead, Defendant mischaracterizes Plaintiffs' FAC by stating that the FAC alleges that Defendant engaged in an unlawful "policy" of failing to provide compliant meal periods and rest breaks. [NOR, ¶ 25, 29.] Relying on this purported "policy" language—which in fact does not appear in the FAC except in reference to "public policy [*e.g.*, FAC, ¶¶ 57(e), 112] —Defendant cites a string of inapposite decisions involving allegations of "unlawful policies" and "systematic, company-wide policy." [NOR, ¶ 25, 29.] However, since Plaintiffs' FAC ***does not allege*** that Defendant's violative conduct was part of its "policy," Defendant's ground for removal does not correlate with the language of the FAC and fails on this ground alone.  [*See generally* FAC.] []Further, Defendant erroneously asserts that a 100% violation rate is supported by Plaintiffs' allegations regarding the putative class members' inability to leave Defendant's premises during meal periods and rest breaks, as well as the difficulties the class members experienced with taking meal periods and rest breaks. [NOR, ¶ 25, 29.]  Contrary to Defendant's position, Plaintiffs do not allege that Defendant committed meal period and rest break violations 100% of the time. Rather, Plaintiffs allege that Defendant maintained a "pattern and practice" of failing to provide employees with compliant meal periods and rest breaks. [FAC, ¶ 5(b), (c).]

The Ninth Circuit has held that alleging a "pattern and practice" of alleged violations does not necessarily mean that it is reasonable to assume that such violations were universal. *Ibarra*, *supra*, 775 F.3d at 1199; *see also Garza v. Brinderson Constructors, Inc.,* 178 F.Supp.3d 906, 911 (N.D. Cal. 2016) (holding that defendant's assumption of 100% violation rate was not reasonable where plaintiff's pleading "alleged that defendants 'maintained a policy or practice'" of violations). Such assumptions are an "unreasonable and arbitrary assumption[] to estimate the amount in controversy," and do not satisfy Defendant's burden to prove

PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR ORDER REMANDING ACTION                           Case No. 23-cv-02274-YGR

that CAFA jurisdiction exists over this Action. *Duran v. Allegis Glob. Sols., Inc.*, 2021 WL 3281073, at *1 (N.D. Cal. Aug. 2, 2021).

Moreover, Plaintiffs allege that it was Defendant's "pattern and practice" not to provide compliant meal periods or rest breaks; that Defendant's violations "***predominate***"; that Defendant's violations "hindered [class members] from determining the amounts of ... meal period premium, and rest period premium wages owed to them"; and without certification that there is a risk of "***inconsistent or varying adjudications***." [FAC, ¶¶ 5(b, c, d), 44, 45, 46, 47, 49(e), 58(b, c), 59(a), 59(f)(1) (emphasis added).] Defendant disregards this consistent, limiting language of the FAC in asserting, without evidentiary support, that meal period and rest break violations place $22,324,200 and $22,580,800 in controversy, respectively. [NOR, ¶¶ 26, 30.] To reach these figures, Defendant manipulates the meaning of the FAC to mean that the Class Members experienced meal period violations and rest break violations in 20% of all eligible shifts. [*Id.*] These assumptions are unreasonable. Inconsistent or varying adjudications would be impossible if the Class Members all experienced exactly the same violations, as Defendant improperly asserts in its NOR. Moreover, a practice that "predominate[s]" and that could result in "inconsistent or varying adjudications" does not mean the class members experienced meal period and rest break violations in 20% of all eligible shifts. Defendant's alleged violation rates are pulled from thin air and directly contrary to the FAC's plain language. **Defendant does not supply any evidence for why *any* meal period or rest break violations should be assumed to have occurred for employees on a regular basis, never mind such regular, universal meal period and rest break violations.** Defendant's assumptions are unreasonable, and again, based on language not found in the FAC.

A party *cannot* establish CAFA jurisdiction merely by "plucking a violation rate out of the air and calling it reasonable." *Ryan v. Mission Treatment Servs., Inc.*, 2022 WL 4331093, at *3 (C.D. Cal. Sept. 19, 2022) (quoting *Gonzalez v. H & M*

8

*Hennes Mauritz L.P. et al.*, 2022 WL 179292, at *4 (C.D. Cal. Jan. 20, 2022) ); *see also Toribio v. ITT Aerospace Controls LLC*, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019) ; *Vanegas v. DH Express (USA), Inc.*, 2021 WL 1139743, at *4 (C.D. Cal. Mar. 24, 2021) ; *Koreisz v. On Q Fin., Inc.*, 2018 WL 6567694, at *3 (C.D. Cal. Dec. 12, 2018). Courts regularly find such unsupported assumptions of even *one* meal and *one* rest break violation per week to be impermissible to establish CAFA jurisdiction:

> As other courts in this district have held, ***Defendant may not rely on statistical assumptions to sustain the amount in controversy requirement***. *Armstrong v. Ruan Trans. Co.*, EDCV 16-1143-VAP (SPx), 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25, 2016) (remanding case in which defendant assumed one meal and rest break violation per week for the purposes of calculating amount in controversy). Courts have routinely remanded cases where amount in controversy calculations rely on speculative assumptions unsupported by evidence … See, e.g., *Whitaker v. U.S. Renal Care, Inc.*, No. CV 17- 2661-R, 2017 WL 3412203, at *2 (C.D. Cal. Aug. 8, 2017) (remanding case in which defendant assumed one meal and rest break violation per week for the purposes of calculating the amount in controversy); *Freeman v. Mercy Servs. Corp.*, No. 2:16-cv-01151-TLNKJN, 2017 WL 2572428, at *3-4 (E.D. Cal., June 14, 2017) (remanding case in which defendant assumed one violation per pay period in calculating the amount in controversy for Plaintiff's unpaid meal and rest period claims); *Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13 cv-01092-LJO-JLT, 2013 WL 5274283, at *6 (C.D. Cal. Sept. 17, 2013) (rejecting amount in controversy calculations where "Defendant provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week or why an overtime violation should be presumed to occur for four hours every week"); *Munoz v. Central Parking Sys., Inc.*, No. CV 10-6172, 2010 WL 3432239, at *2 (C.D. Cal. Aug. 20, 2010) (rejecting defendant's assumption of one meal period violation per week because defendant "fail[ed] provide any evidentiary support for th[is] assumption[ ]").

*Salazar v. Johnson & Johnson Consumer Inc.*, 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018) (emphasis added).

Defendant's assertions have no support in either the FAC or in any extrinsic evidence regarding the frequency of violations, or even the frequency of entitlement to meal periods and/or rest breaks. They are just as unreasonable as the purported violation rates that *Salazar* found unsupported. With respect to similar periodic language as at issue here, *Salazar* found that "Defendant sets forth no facts supporting [an] assumed violation rate of 20% (*or even 5%*), nor do Plaintiffs' allegations of 'periodic' violations point to this conclusion." *Id*. (emphasis added).

While *Salazar* noted that some courts have held differently on their specific facts, "these cases are distinguishable because here Plaintiffs limit the allegations in the Complaint — they assert that they and other California Class members were unable to take off duty meal breaks 'from time to time,' and that they and other California Labor Sub-Class members were 'periodically' denied their proper rest periods." *Id*. at *4. This is directly parallel to the "predominate[s]" and other limiting language Plaintiffs use here, and thus, as in *Salazar*, cases that hold differently are distinguishable and do not apply here. Defendant clearly may not assume even a *5% violation rate* based on periodic-type language such as that alleged here. When a defendant presents such estimates as unsupported conjecture, their "arbitrary assumption does not permit the Court to find that Defendant[] ha[s] established by a preponderance of the evidence the amount in controversy…." *Id*. As the Court held in Duran:

> [Defendant's] assumption of a once-per-week incidence of overtime and minimum wage, and meal and rest break violations is even more arbitrary. It would be just as consistent with the complaint to assume a frequency of once-per-month, or possibly once-per-quarter. [Defendant] again did not provide any extrinsic evidence to tip the analysis in its direction, or point to anything in the complaint that might do so.

*Duran, supra*, 2021 WL 3281073, at *3.

PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR ORDER REMANDING ACTION

Case No. 23-cv-02274-YGR

Defendant's arbitrary assumptions that the class members are owed meal period and rest break premiums for 20% of eligible shifts, each, "shows how simple it is to manipulate the assumptions to produce totals larger or smaller than the $5 million threshold." *Vanegas*, 2021 WL 1139743, at *4 (quoting *Lacasse v. USANA Health Sci., Inc.*, 2021 WL 107143, at *3 (E.D. Cal. Jan. 12, 2021)).

In sum, Defendant has proffered no evidence to support its assumptions that:

(1) the putative class is made up of at least 19,000 current and former employees [NOR, ¶ 17, 22];

(2) class members worked at least 8,700,000 shifts of over five hours, from December 30, 2018, through April 26, 2023 [*Id*. at ¶ 24];

(3) between December 30, 2018, and April 26, 2023, the putative class members worked at least 8,713,694 shifts of over five hours [*Id*. at ¶ 26];

(4) between December 30, 2018, and April 26, 2023, the putative class members worked at least 8,800,000 shifts of at least 4 hours [*Id*. at ¶ 30];

(5) the putative class members earned an $12.83 average hourly wage rate [*Id*. at ¶ 26];

(6) meal period violations occurred in 20% of 8,700,000 shifts [*Id*.]; or

(7) rest break violations occurred in 20% of 8,800,000 shifts. [*Id*. at ¶ 30.]

As such, Defendant presents nothing but speculative and manifestly unreasonable calculations for the total amount-in-controversy for the meal period and rest break causes of action. The Court should reject these purported calculations.

### B.   <u>Defendant's Calculation Regarding Failure to Pay Wages Due at Termination is Arbitrary and Unsupported</u>

Defendant asserts, without providing a basis, that 4,790 full-time non-exempt employees in California separated their employment with Defendant more than 30 days prior to its filing of the NOR. [NOR, ¶ 32.] With respect to Plaintiffs' waiting-time penalty allegation, Defendant alleges $14,748,410 in controversy. [*Id*. at ¶ 33.] Defendant reaches this figure by assuming a 100% violation rate but, again, ***provides***

PLAINTIFFS' NOTICE OF MOTION AND          Case No. 23-cv-02274-YGR
MOTION FOR ORDER REMANDING ACTION

***no rationale whatsoever that supports its assumption of a 100% (or indeed any)*** ***violation rate***. [*Id*.] Defendant disregards the FAC's plain language, which alleges not that Defendant's failure to timely pay final wages due at termination was universal, but was instead consistent with Defendant's "pattern and practice." [FAC, ¶ 48.] As such, Defendant's assumed 100% violation rate directly contradicts the plain language of the First Amended Complaint, because the allegations cannot be read to mean that the violations occurred all the time to all employees uniformly without exception.

The allegations in the FAC can only be read to mean that different employees faced different circumstances, not that 100% of employees had exactly the same experience. For example, the issue of whether Defendant failed to provide Class Members with timely final wages is a common question that "***predominate[s]***," and without class certification there is a risk of "***inconsistent or varying adjudications***." [FAC, ¶¶ 58(d), 59(f)(1) (emphasis added).] Inconsistent or varying adjudications would be impossible if 100% of Class Members all experienced exactly the same violations, as Defendant improperly assumes in its NOR. Moreover, the FAC states that the Class is entitled to recover additionally accruing wages "***for each day they were not paid … up to*** thirty (30) days maximum pursuant to California Labor Code § 203 — not for "every day." [*Id.* at ¶ 93 (emphasis added).] The FAC also alleges that it was Defendant's "pattern and practice" to not timely pay final wages — not that Defendant "always" failed to timely pay final wages. [*Id.* at ¶ 48.] Defendant's assumption of a 100% violation rate and maximum penalty contradicts all of these allegations.

The Ninth Circuit has expressly disapproved of the use of a 100% violation rate without evidentiary support. *See Garibay*, 539 Fed.Appx. at 764. In *Garibay*, the plaintiff alleged the defendant failed to timely pay all earned wages at termination. *Id*. The defendant attempted to support its calculation of the amount in controversy with a "declaration by [defendant's] supervisor of payroll, which sets forth only the

number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages." *Id.* Then, the defendant assumed each employee would be entitled to the maximum statutory penalty, but failed to support that assertion with evidence. *Id.* Accordingly, that Court found that "the defendants rel[ied] on speculative and self-serving assumptions about key unknown variables." *Id.* Here, Defendant does not even proffer a declaration in support of its assumptions. Instead, Defendant's assumption that each and every former employee suffered waiting time penalties entitling them to penalties for the entire 30-day period is neither supported by the FAC nor any extrinsic evidence before the Court. Such drastic assumptions, when unsupported by the language of the pleadings, are clearly unreasonable and do not support a finding that the amount-in-controversy requirement under CAFA has been met. *See*, *e.g.*, *Vasserman*, *supra*, 65 F.Supp.3d at 978. In short, nothing in Plaintiffs' FAC nor that Defendant has proffered supports any assumed violation rate (much less an overwhelming 100% rate), including thirty (30) days' penalties, 4,790 former employees, and an $12.83 average hourly wage rate for each. Thus, because there is no basis whatsoever for this calculation, it must also be disregarded and cannot support Defendant's aggregate calculation of the total amount in controversy.

Moreover, as discussed, Defendant must demonstrate that its method of calculation is based on a representative sample from admissible data, from which it "extrapolate[s] ... for the entire class." *Dobbs*, *supra*, 201 F.Supp.3d at 1189 (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202-03 (9th Cir. 2015). Here, Defendant has not presented ***any*** evidence, much less evidence that contains statistical analysis and extrapolated calculations. As in *Dobbs*, Plaintiffs' FAC alleges Defendant violated Labor Code Sections as a "pattern and practice," but does not allege uniform violations. [FAC, ¶ 5, 45, 46, 47.] Despite the FAC's language, Defendant assumes a 100% violation rate. This assumption is purely speculative, as is the purported amount-in-controversy derived from Defendant's speculation.

Here too, Defendant disregards the consistent use of limiting language in the FAC. Defendant misconstrues the FAC to mean that each and every former employee was not paid final wages due at termination, and that each and every former employee is owed the maximum penalty pursuant to California Labor Code section 203. However, nothing in Plaintiffs' FAC nor that Defendant has proffered supports any assumed violation rate (much less an overwhelming 100% rate). Thus, because there is no basis whatsoever for this calculation, it must be disregarded and cannot support Defendant's calculation of the total amount in controversy.

C.   **Defendant's Attempt to Balloon the Amount in Controversy with Unsubstantiated Attorneys' Fees is Improper**

Defendant seeks to inflate its amount-in-controversy amount by arguing that 25% of the total award is reasonable in a class action involving a common settlement fund, even though the Ninth Circuit has rejected this very argument as a ground for removal, holding that "we require a removing defendant to prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a ***preponderance of the evidence***. We also require the defendant to make this showing with summary judgment-type ***evidence*** …." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018) (emphasis added); *see also Garibay, supra*, 539 Fed. App'x at 764-65.

Moreover, even if the percentage of attorneys' fees used by Defendant is not unreasonable in and of itself, it is applied "to valuations of the claims that are inherently unreasonable, [] so the amount attributed to fees cannot be used toward the jurisdictional threshold." *Duran, supra*, 2021 WL 3281073, at *3-4; *see also Smith.*, 2016 WL 356020, at * 5 (C.D. Cal. 2016)  ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee … would necessarily place the amount in controversy over the $5,000,000 CAFA threshold."). Because Defendant failed to substantiate the purported damages it alleged, there is no justification to add a further

14

conjectural 25% fee multiplied by these speculative, unsupported damages on top of already speculative, unsupported damages. Thus, on this ground, as well, Defendant cannot bootstrap Plaintiffs into federal court.

### D.   Defendant's Authorities Are Unavailing

In an effort to support its baseless assumed violation rates, Defendant cites multiple cases that are clearly inapplicable here.  For example, in *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016) [NOR, ¶ 25, 29], the Supreme Court of California held that state law required employers to authorize off-duty rest periods for guards, and requiring guards to remain on call during rest periods, did not satisfy the employer's obligation to relieve guards from their duties and employer control. There, a Requirement of employment was for employees to keep their pagers and radio phones on during rest periods. Plaintiffs successfully argued that the defendant's uniform *policy* of requiring its employees to remain "on-call" during rest breaks was actually a *policy* of requiring its employees to remain "on-duty" during rest breaks — and that such a *policy* violated state law. Here, Plaintiffs do not allege that Defendant's maintained violative policies.

As to *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755 (C.D. Cal. May 21, 2015) [NOR, ¶ 25, 29], the complaint at issue had express "policy" language that is absent from the FAC here.  Further, the defendant supported its calculations with evidence, including multiple declarations, which are not present here. *Mejia* also cited the holding in *Ibarra v. Manheim Investments, Inc.*, affirming that a "removing defendant could not assume a 100% violation rate where the plaintiff had alleged only that the defendant had a 'pattern and practice' of committing wage-and-hour violations," which directly parallels the FAC here, precluding removal jurisdiction. [FAC, ¶¶ 5, 45, 46, 47, 48.]

Similarly, in *Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. July 10, 2014) [NOR, ¶ 25], the complaint at issue repeatedly alleged that the defendants had maintained uniform *policies* of meal period and rest break violations, unlike the FAC

here. Considering those allegations, *Ford* stated that a 38% violation rate for meal period and rest break violations may have been reasonable, much less than the 100% violation rate that Defendant misleadingly cites. [NOR, ¶ 25.] However, *Ford* also held that the defendant's assumed violation rates failed when they were "unsubstantiated," "rested on unsubstantiated assumptions," were "not adequately grounded in summary data," and "lack[ed] an evidentiary basis."

Further, *Ford* accepted a 100% violation rate for only waiting time penalties considering the express "policy" language alleged and only after the defendant submitted sufficient summary data in its opposition to remand. Likewise, for meal period and rest break violations, the Court accepted a 18% violation rate and a 19% violation rate, respectively, but only in consideration of the "policy" language alleged and only after the defendant submitted sufficient summary data.  Here, Defendant has not submitted ***any*** summary-judgement type evidence, nor have Plaintiffs alleged that Defendant maintained a uniform *policy* of violative conduct.

Moreover, in *Jauregui v. Roadrunner Transportation Servs., Inc.*, No. 2:21-CV-04657-RGK-PD, 2021 WL 4100286, *5 (C.D. Cal. Sept. 8, 2021), rev'd and remanded, 28 F.4th 989 (9th Cir. 2022), the defendant argued that a 100% violation rate was appropriate for the waiting time penalties claim "based on Plaintiff's allegations of 'policies and practices[.]'" The District Court agreed that upon the allegations, a 100% violation rate was appropriate, but declined to apply the entire 30-day penalty for waiting time penalties based on a lack of evidence, despite the defendant's proffered declaration from its Senior Payroll Lead. On appeal, the Court held the defendant's assumed 100% violation rate was not unreasonable but held "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022). This is

1   precisely the situation here, where Defendant mischaracterizes the FAC and relies
2   instead on inapplicable case law.

3       Finally, in *Crummie v. Certified Safety, Inc.*, No. 17-CV-03892-RS, 2017 WL
4   4544747 (N.D. Cal. Oct. 11, 2017) [NOR, ¶ 32], the complaint alleged that the
5   defendant engaged in uniform *policies* of violative conduct, unlike the FAC here.
6   Additionally, the defendant supported its removal and opposition to remand with
7   summary-judgement type evidence, including multiple declarations, unlike
8   Defendant here. The Court recognized that "pattern and practice" allegations — like
9   the allegations in Plaintiffs' FAC — do not support an assumption of a 100%
10  violation rate.  Further, the Court stated that "[i]f the gravamen of the allegation were
11  that [defendant] was sometimes tardy in providing final paychecks, then indeed it
12  would ***not be reasonable to assume*** that nearly all employees did not get their final
13  paychecks for 30 or more days."  (*Id.* (emphasis added).) This is the case here. The
14  plain language of Plaintiffs' FAC, as analyzed above, does not support Defendant's
15  assumptions regarding its failure to pay final wages at the time of termination of the
16  employment.

17  ## IV.   CONCLUSION

18      Absent sufficient summary-judgment type extrinsic evidence proffered by the
19  proponent of removal, there can be no basis for federal jurisdiction. One California
20  federal court denigrated similar tactics as "a wasteful and silly, but routine, exercise
21  in mathematical fantasyland." *Toribio, supra*, 2019 WL 4254935, at *3. Even if
22  Defendant revised its assumed violation rates further down, any "alternative
23  calculation [rates] provided by Defendant again does 'not take the place of
24  evidence.'" *Vanegas, supra*, 2021 WL 1139743, at *4.

25      Accordingly, Defendant's NOR fails to establish by a preponderance of the
26  evidence that the $5,000,000 jurisdictional threshold under CAFA has been met.
27  Plaintiffs respectfully request that this Court remand the action back to the state court
28  in which it belongs.

PLAINTIFFS' NOTICE OF MOTION AND          Case No. 23-cv-02274-YGR
MOTION FOR ORDER REMANDING ACTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: June 9, 2023                          **WILSHIRE LAW FIRM**

By: */s/ Jeffrey C. Bils*
_____
Jeffrey C. Bils

Attorneys for Plaintiffs

PLAINTIFFS' NOTICE OF MOTION AND                          Case No. 23-cv-02274-YGR
MOTION FOR ORDER REMANDING ACTION