MORGAN, LEWIS & BOCKIUS LLP
John S. Battenfeld, Bar No. 119513
Tuyet T. Nguyen Lu, Bar No. 256431
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501
john.battenfeld@morganlewis.com
tuyet.nguyen@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
J.P. Schreiber, Bar No. 317829
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: +1.415.442.1000
Fax: +1.415.442.1001
jp.schreiber@morganlewis.com

Attorneys for Defendant
TESLA, INC. dba TESLA MOTORS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELIJAH BAER, JOSHUA BAYANGOS, RONALD GRUEL, ISAIAH HAMPTON, NATHAN JOHNSON, CHANDRASEKAR KUPPUCHAMY, DEREK LEWIS, DESERIE MARTIN, JOSEPH MARTINEZ, MAYRENI MORALES, SHONTAE STEPHENS, SIENNA STEPHENS, RUDY VALDEZ, JATEL VERCHER, and KAYLA WILLIAMS, individually, and on behalf of all others similarly situated,

Plaintiffs,

vs.

TESLA MOTORS, INC., a California corporation, and DOES 1 through 10, inclusive,

Defendants.

Case No. 4:23-cv-02274-YGR

**DEFENDANT TESLA, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS TO ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY NON-INDIVIDUAL PAGA CLAIMS**

Date: December 12, 2023
Time: 2:00 p.m.
Courtroom: 1

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. LEGAL ARGUMENT .......... 2

A. Tesla Has Established That All Plaintiffs Must Arbitrate Their Claims. .......... 2

1. Tesla Is a Party Bound By its Arbitration Agreements. .......... 2

2. Plaintiffs Valdez and Williams Cannot Avoid Arbitration By Asserting That They "Do Not Recall" Electronically Signing the Agreements. .......... 3

3. There is No Evidence Of "Fraud" as to the Staffmark Plaintiff Agreements, And the Agreements Are Enforceable Even if Plaintiffs Didn't Sign Them. .......... 5

4. As There Are No Genuine Disputes of Material Fact as to Whether Plaintiffs Entered Into Arbitration Agreements, They are not Entitled to a Jury Trial. .......... 7

B. The Agreements Are Not Unconscionable. .......... 7

1. The Agreements Have at Most a Low Degree of Procedural Unconscionability. .......... 7

2. The Agreements Are Not Substantively Unconscionable. .......... 8

a. The NDIAA Provisions Do Not Affect the Fairness of Plaintiffs' Arbitration Agreements .......... 8

b. The NDIAA Provisions Are Not Unconscionable .......... 9

c. Any Unconscionable Terms in the Separate NDIAAs Are Easily Severed .......... 10

d. There Is No Waiver or Collateral Estoppel of Tesla's Ability to Argue Against Substantive Unconscionability .......... 11

C. Plaintiffs Misleadingly Attempt to Distinguish the Many Orders Enforcing Tesla's Arbitration Agreements. .......... 12

D. Plaintiffs Make No Attempt To Argue That the Rule of *Adolph v. Uber* Escapes FAA Preemption. .......... 13

E. If Plaintiffs' PAGA Action is Not Dismissed, the FAA Requires a Stay. .......... 13

III. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adolph v. Uber Tech, Inc.*,
14 Cal.5th 1104 (2023) .......... 2, 13, 14, 15

*Ali v. J.P. Morgan Chase Bank, N.A.*,
647 F. App'x 783 (9th Cir. 2016) .......... 7

*Baltazar v. Forever 21, Inc.*,
62 Cal.4th 1237 (2016) .......... 9

*Buchsbaum v. Digital Intelligence Systems, LLC*,
No. 2020 WL 7059515 (S.D. Cal. Dec. 2, 2020), 2020 WL 7059515 .......... 11

*Bulnes v. Suez WTS Servs. USA, Inc.*,
No. 22-CV-1154-BAS-AHG, 2023 WL 3262938 (S.D. Cal. May 4, 2023) .......... 5, 7

*Carbajal v. CWPSC, Inc.*,
245 Cal. App. 4th 227 (2016) .......... 10

*Carmona v. Domino's Pizza, LLC*,
73 F.4th 1135 (9th Cir. 2023) .......... 10

*Davis v. Kozak*,
53 Cal. App. 5th 897, 267 Cal. Rptr. 3d 927 (2020) .......... 3

*Davis v. Nordstrom, Inc.*,
755 F.3d 1089 (9th Cir. 2014) .......... 6

*Dhaliwal v. Ace Hardware Corp.*,
No. 222CV00446DADKJN, 2023 WL 2555471 (E.D. Cal. Mar. 17, 2023) .......... 5

*Espejo v. S. California Permanente Med. Grp.*,
246 Cal. App. 4th 1047 (2016) .......... 3, 5

*Frontier-Kemper Constructors, Inc. v. Liu*,
2020 WL 13303553 (C.D. Cal. Nov. 12, 2020) .......... 7

*Fuentes v. Empire Nissan, Inc.*,
90 Cal. App. 5th 919 (2023) .......... 8

*Gavrilloglou v. Prime Health Mgmt., Inc.*,
83 Cal. App. 5th 595 (2022) .......... 14, 15

*Gregg v. Uber Techs., Inc.*
(2023) 89 Cal. App. 5th 786 .......... 14

*Hicks v. Macy's Dep't Stores, Inc.*, 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006) .......... 6

*Jenkins v. Sterling Jewelers, Inc.* (S.D. Cal. Feb. 16, 2018), 2018 WL 922386 .......... 14

*Knapke v. PeopleConnect, Inc.*, 38 F.4th 824 (9th Cir. 2022) .......... 7

*Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420 (N.D. Cal. 2018) .......... 11

*Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436 (2020) .......... 10

*Leenay v. Superior Ct.*, 81 Cal. App. 5th 533 (2022) .......... 15

*Lotsoff v. Wells Fargo Bank, N.A.*, No. 18-CV-02033-AJB-JLB, 2019 WL 4747667 (S.D. Cal. Sept. 30, 2019) .......... 12

*Lucido v. Superior Ct.*, 51 Cal. 3d 335 (1990) .......... 12

*Mederos v. Tesla, Inc.* (Los Angeles Superior Court, No. 22STCV15424, Sept. 6, 2022) .......... 8, 11

*Merhi v. Lowe's Home Ctr., LLC* (S.D. Cal. Oct. 13, 2023), 2023 WL 6498500 .......... 14

*Moscato v. Best Buy Stores, L.P.* (San Francisco Superior Court, No. CGC-23-607259, Nov. 21, 2023) .......... 13

*Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437 (9th Cir. 1994) .......... 6

*Ngo v. PMGI Fin., LLC*, No. 18-CV-05401-JCS, 2018 WL 6618316 (N.D. Cal. Dec. 18, 2018) .......... 3, 4, 5

*Pearson v. P.F. Chang's China Bistro, Inc.*, No. 13-CV-2009-JLS (MDD), 2015 WL 12910914 (S.D. Cal. Feb. 23, 2015) .......... 12

*Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357 (9th Cir.1982) .......... 6

*Pierce v. Tesla, Inc.*, N.D. Cal. Case No. 22-cv-03177-TLT (N.D. Cal. Jan. 30, 2023) .......... 8, 13

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223 (2012) .......... 6, 9

*Pope v. Sonatype, Inc.*,
No. 5:15-cv-00956-RMW, 2015 WL 2174033 (N.D. Cal. Aug. 27, 2015)............................ 11

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017)........................................................................... 7, 9, 10

*Rizvanovic v. United Parcel Service, Inc*.,
2023 WL 346800 (E.D. Cal. Jan. 20, 2023)........................................................................ 2

*Rocha v. U-Haul Co.*,
88 Cal. App. 5th 65 (2023)............................................................................................ 15

*Ruiz v. Moss Bros. Auto Grp.*,
232 Cal. App. 4th 836 (2014).......................................................................................... 3, 4

*Serafin v. Balco Props. Ltd*., *LLC*,
235 Cal. App. 4th 165 (2015)............................................................................................ 2

*State of Cal., Dep't of Emp. v. Fred S. Renauld & Co.*,
179 F.2d 605 (9th Cir. 1950).......................................................................................... 12

*Turner v. Northrop Grumman Corp*.,
No. CV-23-3756-PA (C.D. Cal. Jul. 17, 2023) 2023 WL 4560998 ......................................... 5

*Turng v. Guaranteed Rate, Inc*.,
371 F. Supp. 3d 610 (N.D. Cal. 2019) .............................................................................. 2

*United States v. Patterson*,
230 F.3d 1168 (9th Cir. 2000)......................................................................................... 12

*Wherry v. Award, Inc.*,
192 Cal. App. 4th 1242 (2011)......................................................................................... 11

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007)........................................................................................... 12

**Statutes**

9 U.S.C. 3 ......................................................................................................................... 14

Cal. Code of Civ. Proc. § 1281.4 ...................................................................................... 13, 14

Cal. Code of Civ. Proc. § 1285 ............................................................................................ 14

Federal Arbitration Act (FAA)........................................................................... 1, 2, 6, 13, 14

**Rules**

L.R. 7-3 ............................................................................................................................... 1

## II. INTRODUCTION

Plaintiffs' Opposition to Tesla's Motion to Compel Arbitration ("Motion" [Dkt. No. 38]) fails to establish grounds to avoid their agreements to arbitrate that are valid and enforceable under the Federal Arbitration Act ("FAA").

First, Plaintiffs baselessly challenge four of the agreements on the purported grounds that Elon Musk's signature on these agreements has not been authenticated. However, Tesla does not need to authenticate its own signature, particularly when it agrees it is bound by the agreements. Indeed, numerous courts have held that an employer can enforce even an unsigned arbitration agreement when the employer authored the agreement and sought to enforce it. Here, the agreements are signed on behalf of Tesla.

Four of the fourteen Plaintiffs argue that they did not agree to arbitrate. Plaintiffs Valdez and Williams merely state that they do not recall signing the agreements, but it is black letter law that this is not a basis to avoid arbitration. Tesla provided evidence in the Declaration of Ben Flesch authenticating their electronic signatures, that these Plaintiffs do not rebut.[1]

As to non-employee Plaintiffs (and sisters) Shontae and Sienna Stephens, they argue that the signatures on the agreements are not theirs. However, the Opposition concedes that their arbitration agreements "were expressly a condition of employment." Opp. At 11. Because it is undisputed that these Plaintiffs accepted employment with Staffmark and their assignment at Tesla, the agreements are enforceable even if they did not sign them.

Plaintiffs ignore the substantial authority cited by Tesla where courts have enforced its arbitration agreements and seize on an outlier non-precedential superior court in order to argue that their agreements are substantively unconscionable because some of the Plaintiffs also signed a separate Non-Disclosure and Inventions Assignment Agreement ("NDIAA"). That agreement has no bearing on Plaintiffs' claims in this Action and so cannot be a basis to find any unconscionability as to the arbitration agreements, much less a basis to deny Tesla's Motion. Even if the NDIAA was relevant, that agreement is not unconscionable, and any purported

---

[1] Plaintiffs filed improper and meritless Evidentiary Objections to the Flesch Declaration [Dkt. 42-6] that should be disregarded because L.R. 7-3 states that "any evidentiary or procedural objections to the motion must be contained within the [opposition] brief or memorandum."

unconscionable provisions can be severed under Ninth Circuit precedent.

Plaintiffs do not respond to Tesla's argument that the rule of PAGA standing established by the California Supreme Court in *Adolph v. Uber* is preempted by the FAA. If the Court does not dismiss the non-individual PAGA claims, it must stay those claims under the FAA.

# III. LEGAL ARGUMENT

## A. Tesla Has Established That All Plaintiffs Must Arbitrate Their Claims.

The Opposition does not dispute that the FAA covers the Agreements that encompass the claims at issue. Plaintiffs instead challenge the enforceability of the Agreements on various grounds, none of which support denial of Tesla's Motion.

### 1. Tesla Is a Party Bound By its Arbitration Agreements.

Tesla Plaintiffs concede that Elon Musk's signature is on their Agreements. Plaintiffs Hampton, Martinez, Valdez, and Williams argue that Tesla cannot compel arbitration unless it authenticates Mr. Musk's signature on the Inside Tesla version of the Agreement. Not surprisingly, Plaintiffs cite no arbitration law precedent for this meritless argument. First, because Tesla does not dispute that the Agreement is binding on Tesla, it does not need to authenticate the signature of a Tesla representative. Plaintiffs do not present any evidence to dispute the signature's authenticity, but even if they had, under the FAA and California law, "the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 176-77 (2015). Further, an agreement to arbitrate, despite the lack of defendant's signature, can be evidenced by "conduct from which one could imply either ratification or implied acceptance of such a provision." *Rizvanovic v. United Parcel Service, Inc.*, 2023 WL 346800, at *7 (E.D. Cal. Jan. 20, 2023). Here, as in *Rizvanovic*, Tesla "authored the agreement, provided the agreement to Plaintiff through its portal, accepted Plaintiff's employment application, hired Plaintiff, and filed [a] motion to compel arbitration." *Rizvanovic*, 2023 WL 346800, at *7. *See also, Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 622–23 (N.D. Cal. 2019) ("Just as with any written agreement signed by one party, an arbitration agreement can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided that

the party seeking enforcement has performed or offered to do so."); *Davis v. Kozak*, 53 Cal. App. 5th 897, 915, 267 Cal. Rptr. 3d 927, 942 (2020) (finding assent based on the facts that the defendant wrote the agreement, put it on its letterhead, and the agreement included terms specifying that both parties were bound by the agreement).

Here, the arbitration agreements at issue are on Tesla's letterhead, were drafted by Tesla, and expressly state in the first line: "This Mutual Arbitration Agreement ("Agreement") is entered into by Tesla, Inc … and the undersigned employee …" Flesch Decl., Ex. J-M [Dkt. 38-1]. And by moving to compel arbitration, Tesla is of course assenting that it is bound by the Agreement. Plaintiffs' authentication argument must be rejected.

**2. Plaintiffs Valdez and Williams Cannot Avoid Arbitration By Asserting That They "Do Not Recall" Electronically Signing the Agreements.**

Plaintiffs Valdez and Williams have submitted declarations with identically-worded paragraphs asserting that they "do not recall receiving or signing the arbitration agreements." However, they both admit that they "went through Defendant's onboarding process" during which they signed multiple documents at the time they were hired. The Opposition asserts that "this is enough" to challenge the authenticity of an electronic signature and that Tesla's evidence is insufficient to authenticate their signatures. Plaintiffs are wrong on both counts.

"[T]he burden of authenticating an electronic signature is not great." *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 844 (2014). For example, in *Espejo v. S. California Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1059 (2016) the court found the electronic signature was authenticated based on evidence of security precautions regarding transmission of the agreement and the steps the applicant would take to e-sign, despite the plaintiff asserting that he "did not recall ever signing" the agreement. *See also Ngo v. PMGI Fin., LLC*, No. 18-CV-05401-JCS, 2018 WL 6618316, at *5 (N.D. Cal. Dec. 18, 2018) (evidence outlining the steps involving the plaintiff creating online credentials necessary to electronically sign the agreement were sufficient to authenticate the agreement, despite the plaintiff claiming that he did not "recall[]" e-signing the agreement).

Indeed, in previous cases Tesla presented similar evidence to authenticate electronic

signatures that courts found was sufficient. Like here, Tesla submitted declarations detailing the process for electronically signing the agreements and outlining security measures establishing that the plaintiffs were the only ones who could have signed the agreements. *See, e.g.*, *Stewart v. Tesla, Inc.,* RJN Ex. 8 (finding similar Tesla declaration provided "a sufficient showing of the 'factual details' that form the basis for an inference that the record or signature was the act of the employee, authenticating any electronic record of an employee's acceptance"); *Buggs v. Tesla, Inc.,* RJN Ex. 9 (electronic signature was authenticated where "[t]he evidence shows that the offer of employment was sent to Plaintiff's personal email account, only Plaintiff had access to that account, and no one but Plaintiff could have electronically agreed to the employment agreement and arbitration provision"). While these cases confirm that Tesla has already provided sufficient evidence of authentication, to address Plaintiffs' wrong contention that this evidence is not enough, Tesla is providing even more evidence with this reply to *further* authenticate that Valdez and Williams electronically signed the agreements. *See* Suppl. Declaration of Ben Flesch, Ex. ¶¶ 5-7, 9-11, Exs. Q-T.

Plaintiffs claim *Ruiz* is "directly on point" but that case is readily distinguishable. There, the court emphasized how the record lacked evidence "that all [of the company's] employees were required to use their unique login ID and password when they logged into the HR system and signed electronic forms and agreements," and instead only contained an "unsupported assertion that [the plaintiff] was the person who electronically signed the agreement." 232 Cal. App. 4th at 844. Here, in contrast, Tesla's declaration outlines the very information missing in *Ruiz*—*i.e.*, how each employee, including Valdez and Williams, was required to create credentials necessary to access their application and subsequent offer letter, that they used those credentials to access and e-sign the offer letter and arbitration agreement, and that there were security measures in place establishing that only they could have accessed and signed the agreement. *See, e.g., Ngo*, 2018 WL 6618316, at *6 (distinguishing *Ruiz* because unlike *Ruiz*, the employer's declarant "states here that the credentials provided to [the plaintiff] were necessary to access his application page, and that [the plaintiff] used those credentials to complete the loan agreement"). Further, Valdez and Williams admit that they did in fact receive and sign various documents

presented to them as part of their onboarding process.

As the courts found in *Espejo* and *Ngo,* Valdez and Williams' mere assertion that they "do not recall" signing the arbitration agreement does not rebut Tesla's evidence. *See also Bulnes v. Suez WTS Servs. USA, Inc.*, No. 22-CV-1154-BAS-AHG, 2023 WL 3262938, at *13 (S.D. Cal. May 4, 2023) (finding that "[the plaintiff's] inability to recall is insufficient on its own to rebut evidence of his properly authenticated e-signature") (internal quotation marks omitted); *Dhaliwal v. Ace Hardware Corp.*, No. 222CV00446DADKJN, 2023 WL 2555471, at *5 (E.D. Cal. Mar. 17, 2023) (electronic signature authenticated; the "fact that a person does not remember signing [an] Arbitration Agreement ... is not sufficient to challenge the existence of an agreement") (internal quotation marks omitted). Indeed, a case Plaintiffs cite agrees. *See Turner v. Northrop Grumman Corp*., No. CV-23-3756-PA (C.D. Cal. Jul. 17, 2023) 2023 WL 4560998 ("Plaintiff's testimony that she does not recall signing the 2002 agreement is insufficient to challenge its existence.") These Plaintiffs' Agreements are likewise enforceable.

### 3. There is No Evidence Of "Fraud" as to the Staffmark Plaintiff Agreements, And the Agreements Are Enforceable Even if Plaintiffs Didn't Sign Them.

Plaintiffs Shontae Stephens and Sienna Stephens assert that they did not sign their Agreements. Significantly, although Tesla provided these Agreements to Plaintiffs' counsel on May 30, 2023, they never informed Tesla's counsel that the Staffmark Plaintiffs did not sign them, or provided Tesla with other documents bearing their signature until now, giving Tesla no reasonable opportunity to investigate with Staffmark (their employer who obtained the Agreements). The Opposition then leaps to the wholly inaccurate assertion that Tesla is attempting "to hoodwink the Court," when the Staffmark Plaintiffs made no claim of "forgery" before the Opposition. As a preliminary matter, there is no evidence that these signatures were a "forgery" by some unknown person, as opposed to circumstances where the Staffmark Plaintiffs had someone execute the Agreements. In this regard, Tesla's Declarant stated that he reviewed the Agreements in Tesla's possession; he did not assert that he or any Tesla employee was present when these Agreements were executed and provided to Tesla as a condition of the Staffmark Plaintiffs' temporary assignment. Flesch Decl., ¶ 38 [Dkt. 38-1].

After leaping to an unsupported factual assertion of fraud, the Opposition then leaps to an erroneous legal assertion that Tesla should be barred from enforcing any arbitration agreements based on a radical application of the "unclean hands" doctrine. However, none of the authority Plaintiffs cite involved contract enforcement, which does not involve equitable relief, much less motions to compel arbitration. Further, they all involved evidence of undisputed misconduct by a party. Indeed, the Ninth Circuit has held that "only a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." *Pfizer, Inc. v. Int'l Rectifier Corp*., 685 F.2d 357, 359 (9th Cir.1982). Here, there is no such showing. Tesla did not claim to have personal knowledge that Plaintiffs signed [or did not sign] their Agreements, as the Opposition acknowledges at 5:1-4.

Even if Staffmark Plaintiffs did not sign their Agreements, the Opposition concedes that these arbitration agreements were "expressly a condition of employment." Opp at 11. The Agreements confirm this: "As a condition of my assignment to Tesla, Inc…I agree to the following provisions of this [Agreement]." Flesch Decl., Exs. O, P [Dkt. 38-1]. Given this concession, the Agreements to arbitrate are enforceable, whether or not signed by Staffmark Plaintiffs. *See, Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC,* 55 Cal. 4th 223, 236 (2012) ("A signed [arbitration] agreement is not necessary, however, and a party's acceptance may be implied in fact."); *Nghiem v. NEC Elec., Inc*., 25 F.3d 1437, 1439 (9th Cir. 1994) (explaining that the FAA does not require arbitration agreements to be signed by the parties); *Hicks v. Macy's Dep't Stores, Inc*., 2006 WL 2595941, at *3 (N.D. Cal. Sept. 11, 2006) (granting employer's motion to compel arbitration despite the lack of a signature on the arbitration agreement because "it is well-established that a party may be bound to an agreement to arbitrate even absent a signature"). *See also Davis v. Nordstrom, Inc*., 755 F.3d 1089, 1093 (9th Cir. 2014) (holding that receipt of arbitration policy contained in handbook created binding agreement to arbitrate upon beginning employment).

Finally, if the Court has any question about enforcing the Agreements that Staffmark Plaintiffs now claim they didn't sign, Tesla is aware that both Plaintiffs electronically signed

separate arbitration agreements with Staffmark that expressly cover claims against Staffmark's customers such as Tesla, that Tesla has the right to enforce. If necessary, Tesla is prepared to promptly file a motion to compel arbitration as to the Staffmark Plaintiffs based on the Staffmark agreement.

**4. As There Are No Genuine Disputes of Material Fact as to Whether Plaintiffs Entered Into Arbitration Agreements, They are not Entitled to a Jury Trial.**

Plaintiffs' argument that a jury trial is warranted, and their demand for a jury trial based on contract formation, is a meritless attempt to delay their obligation to arbitrate. In order to obtain a jury trial, the "moving party must at a minimum show some 'genuine issue of fact to be tried before a jury.'" *Frontier-Kemper Constructors, Inc. v. Liu*, 2020 WL 13303553 (C.D. Cal. Nov. 12, 2020) (citations omitted). For the reasons stated above, there are no genuine disputes of material fact as to whether Tesla formed an arbitration agreement with the above-named Plaintiffs. The cases cited by Plaintiffs are clearly factually distinguishable. In *Knapke v. PeopleConnect, Inc*., 38 F.4th 824 (9th Cir. 2022), the material fact in dispute was whether the plaintiff's counsel had the authority to agree to the terms of service containing the arbitration agreement at issue on her behalf. *Id.* at 834. In *Hansen v. LMB Mortg. Servs. Inc.*, 1. F. 4th 667, the factual dispute involved whether the plaintiff agreed to a website's terms of use by clicking a button on a consumer website, where the plaintiff declared under penalty of perjury that he never visited the website. *Id.* at 670. No such disputed material facts are present here.

**B. <u>The Agreements Are Not Unconscionable.</u>**

**1. The Agreements Have at Most a Low Degree of Procedural Unconscionability.**

As to procedural unconscionability. Plaintiffs only argue that the Agreements are contracts of adhesion because they were presented as a condition of employment. However, the adhesive nature of an employment contract involves "a low degree of procedural unconscionability at most" that does *not* render an agreement unconscionable unless the degree of substantive unconscionability is high. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017). Indeed, the two primary cases Plaintiffs cite *compelled* arbitration where courts

did not find more than a minimal level of procedural unconscionability. *See Ali v. J.P. Morgan Chase Bank, N.A.*, 647 F. App'x 783, 785 (9th Cir. 2016) (finding adhesive agreements were only "minimally procedurally unconscionable"); *Fuentes v. Empire Nissan, Inc.*, 90 Cal. App. 5th 919, 928 (2023) (reversing trial court's denial of motion to compel arbitration, because while "the law attributes some procedural unfairness to every form employment contract, the real fight boils down to whether the substance of the final terms are fair"). Here, the terms of all Agreements are fair.

**2. The Agreements Are Not Substantively Unconscionable.**

Plaintiffs do not argue that even *one* term in their arbitration agreements is substantively unconscionable. Instead, Tesla Plaintiffs assert that two terms in their *separate, standalone* NDIAA addressing confidential information, not arbitration, make their arbitration agreements substantively unconscionable. The terms Plaintiffs identify in the NDIAAs are: (1) a waiver of Tesla's requirement to post a bond to obtain a preliminary injunction as to violations of the NDIAA; and (2) a provision that the employee must prove by "clear and convincing evidence" that proprietary information is publicly available and thus should be excluded from the NDIAA. Plaintiffs are wrong for multiple reasons.

**a. The NDIAA Provisions Do Not Affect the Fairness of Plaintiffs' Arbitration Agreements.**

First, these two NDIAA provisions do not affect the fairness of Tesla Plaintiffs' arbitration agreements. In *Pierce v. Tesla, Inc.*, N.D. Cal. Case No. 22-cv-03177-TLT (N.D. Cal. Jan. 30, 2023), Judge Thompson of this Court granted Tesla's motion to compel and rejected the plaintiff's argument that the arbitration agreement was substantively unconscionable based on the purported unconscionability of the same NDIAA. *See* RJN, Ex. 18. The Court held that "any issues allegedly affecting the substantive fairness of the [NDIAA] do not affect the fairness of the separate Arbitration Agreement, and Plaintiff has failed to offer any evidence in support of her claim that the Arbitration Agreement itself is substantively unconscionable."

In this regard, the two NDIAA provisions Plaintiffs point to concern disputes over issues covered by the NDIAA as to confidential information—which are not the disputes at issue in

Plaintiffs' *wage-and-hour* claims. *See Mederos v. Tesla, Inc.* (Los Angeles Superior Court, No. 22STCV15424, Sept. 6, 2022), Supplemental Request for Judicial Notice ("Supp. RJN"), Ex. 19 (granting Tesla's motion to compel arbitration and emphasizing that "Plaintiff's claims in this action do not concern the PIIA or Revised PIIA). Nor do Plaintiffs' claims here.

b. **The NDIAA Provisions Are Not Unconscionable.**

Even if the NDIAA had any impact in assessing whether to enforce the arbitration agreements, the two provisions Plaintiffs cite are not unconscionable. "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather the term must be so one-sided as to shock the conscience." *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal.4th 223, 246 (2012).

Here, the NDIAA provision allowing Tesla to seek an injunction without posting a bond is not unconscionable. A "contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *Armendariz,* 24 Cal.4th83, 117 (2000), abrogated in part by *Concepcion* 563 U.S. 333 (quotation marks omitted); *Poublon*, 846 F.3d at 1261 ("Not all one-sided contract provisions are unconscionable"). In *Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1241, 1250 (2016), a statement in the contract that the company had "valuable trade secrets and proprietary and confidential information" was sufficient to justify a one-sided provision. Here, the NDIAA explains that irreparable harm may result if the employee discloses Tesla's trade secrets or proprietary information. Thus, the NDIAA provides a reasonable justification for allowing Tesla to obtain injunctive relief to prevent such disclosure without posting a bond.

Nor is the NDIAA provision unconscionable requiring the employee to provide by "clear and convincing evidence" that information is not proprietary because it "is or lawfully becomes part of the public domain." Plaintiffs cite to no published authority that it is; they rely on an unpublished superior court order that notably cites no authority to support its holding. Tesla has a legitimate commercial need to protect its proprietary information, which justifies the provision putting this burden of proof on any attempt by an employee to use proprietary information based on a claim that it is lawfully in the public domain. *See Baltazar*, 62 Cal.4th at 1250 (2016). Thus,

this provision has a business justification and is not unconscionable.

Plaintiffs wrongly interpret the NDIAA as requiring the granting of injunctive relief without proof of irreparable harm. Plaintiffs rely on *Lange*, but there the agreement provided that "irreparable injury *will* result to Company from Employee's violation of any of the terms of this Agreement." *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 443 (2020) (emphasis added). Here, the NDIAA states that an employee's violation "may cause the Company irreparable harm," and "the Company shall therefore have the right to enforce this Agreement" by injunction. "May cause" does not mean that Tesla is contractually entitled to injunctive relief for every violation of the NDIIA; there is no waiver of Tesla's need to establish the grounds to obtain injunctive relief, including showing irreparable harm.

Plaintiffs cite to *Carbajal* and *Carmona*, but both cases involved clearly one-sided *arbitration-specific* terms. In *Carbajal*, the agreement contained *four* unconscionable provisions, including a waiver of the plaintiff's ability to recover attorney's fees in arbitration and a unilateral right for the employer to appeal an arbitration award. *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 247 (2016). Similarly, in *Carmona* the agreement completely exempted the employer, but not the employee, from bringing any confidentiality-related claims in arbitration, and it also contained a one-sided attorneys' fee provision favoring the employer. Here, Plaintiffs only claim two terms are unconscionable, found in the NDIAA and having no bearing on the fairness of the arbitration of Plaintiffs' individual wage-and-hour claims. *Carmona v. Domino's Pizza, LLC*, 73 F.4th 1135 (9th Cir. 2023).

c. **Any Unconscionable Terms in the Separate NDIAAs Are Easily Severed.**

Alternatively, while Plaintiffs have failed to establish that any provision of the arbitration agreement is substantively unconscionable, the Court has the authority to limit or sever the two alleged unconscionable provisions and enforce the agreement to arbitrate. *Poublon*, 846 F.3d at 1272– 73. The limitation or severance option exists because it is beyond dispute that the "central purpose" of the subject arbitration agreement is not "so tainted with illegality that there is no lawful object of the court to enforce the agreement" and the agreement is not otherwise "permeated" with unconscionable provisions. *Id*.

All of the Tesla arbitration agreements at issue have a severability clause, allowing the Court to sever any unconscionable terms and enforce the remainder of the Agreement. Indeed, district courts apply severance to enforce arbitration agreements containing even more than two unconscionable provisions that unlike here are actually in the agreement. *See, e.g., Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 433 (N.D. Cal. 2018) (emphasizing presence of severability clause and severing three unconscionable terms from the arbitration agreement); *Buchsbaum v. Digital Intelligence Systems, LLC,* No. 2020 WL 7059515 (S.D. Cal. Dec. 2, 2020), 2020 WL 7059515 at *8 (severing three unconscionable provisions); *Pope v. Sonatype, Inc.*, No. 5:15-cv-00956-RMW, 2015 WL 2174033, at *6-7 (N.D. Cal. Aug. 27, 2015) (same).

Indeed, severance is *more* appropriate here than in these cases, as the purportedly unconscionable provisions are not even in the arbitration agreements and have nothing to do with arbitration. Courts analyzing this exact scenario with Tesla's arbitration agreements and NDIAAs have severed purportedly unconscionable provisions with the separate NDIAA. *See, e.g.*, *Mederos v. Tesla, Inc.*, *supra*, Supp. RJN, Ex. 19 (granting Tesla's motion to compel arbitration and concluding that any unconscionable provisions in Tesla confidentiality agreement "may in any case be severed"). Plaintiff relies on *Wherry*, but that case involved agreements with far more one-sided terms directly relating to arbitration—specifically, "no provision for discovery, plaintiffs are subject to fees and costs prohibited by FEHA, and the limitations period is less than what is allowed by statute." *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 1248 (2011). No such terms are present here.

**d. There Is No Waiver or Collateral Estoppel of Tesla's Ability to Argue Against Substantive Unconscionability.**

In an attempt to avoid the merits of the Motion, Plaintiffs argue that: (1) Tesla has somehow waived its right to respond to arguments raised in Plaintiffs' Opposition because the Motion didn't address a non-precedential unpublished superior court order (*Hollocks v. Tesla, Inc.)* that Plaintiffs' counsel previously mentioned in an email; and (2) this superior court order that is not a final merits ruling somehow gives rise to collateral estoppel. Neither argument has merit.

First, Tesla had no obligation to address *Hollocks* in the Motion, an unpublished order that is not entitled to any precedential weight, much less binding on this Court. *See, e.g., State of Cal., Dep't of Emp. v. Fred S. Renauld & Co.*, 179 F.2d 605, 609 (9th Cir. 1950) (holding that superior court decisions are not binding on federal courts). Further, Tesla's Motion argues that the arbitration agreements are not unconscionable and that any unconscionable provisions can be severed, so it did not waive either of those issues. *See* Mtn. at 14-18. In any event, Plaintiffs are simply wrong that a reply brief is not the time to respond to an argument made in an opposition brief. Both cases Plaintiffs cite for their misguided waiver argument held that a party may not raise a completely new argument on reply; they did not hold that a moving party can't respond to an argument raised in an opposition. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000). That is of course the purpose of a reply.

Plaintiffs' collateral estoppel argument also fails. As Plaintiffs concede, to establish collateral estoppel, a party must show among other elements that the decision in the former proceeding was final and on the merits. *Lucido v. Superior Ct.*, 51 Cal. 3d 335, 341 (1990). An order on a motion to compel arbitration cannot have collateral estoppel effect, because it is not a final judgment on the merits. *Lotsoff v. Wells Fargo Bank, N.A.*, No. 18-CV-02033-AJB-JLB, 2019 WL 4747667, at *4 (S.D. Cal. Sept. 30, 2019) (""a decision on a motion to compel arbitration is not a final judgment on the merits that gives rise to collateral estoppel"); *Pearson v. P.F. Chang's China Bistro, Inc.*, No. 13-CV-2009-JLS (MDD), 2015 WL 12910914, at *4 (S.D. Cal. Feb. 23, 2015) ("the Court is persuaded by Defendant's argument that a decision on a motion to compel arbitration is not a final judgment on the merits that gives rise to collateral estoppel").

### C. <u>Plaintiffs Misleadingly Attempt to Distinguish the Many Orders Enforcing Tesla's Arbitration Agreements.</u>

Plaintiffs argue that the many court decisions, including by federal courts, granting Tesla's motions to compel arbitration should be given no weight because these courts purportedly enforced "substantively different purported arbitration agreements." Opposition, 18:8-10. To support this patently erroneous claim, Plaintiffs cherry pick one decision (*Murrain*), involving an agreement where the plaintiff was given three days to consider his offer

letter/agreement and claim that none of the Plaintiffs challenging their agreements were given three days. Leaving aside that the FAA does not require a three-day review period, and that all four of the Tesla Plaintiffs who challenge their Agreements did in fact receive two or three days to review (Flesch Decl., Exs. J-M), several of the past orders granting Tesla's motions to compel involved the exact same Agreement that one or more Plaintiffs signed. *See*, e.g., *Pierce v. Tesla, Inc*. and *Garibay v. Tesla, Inc.*, which involved arbitration provisions identical to the Agreements entered into by Plaintiffs Martin and Johnson; and *Vela v. Tesla, Inc.*, that addressed arbitration provisions identical to the agreement entered into by Plaintiff Gruel. RJN, Exs. 13, 15, 18. And to be clear, Tesla does not argue that these orders have collateral estoppel effect, because as discussed above an arbitration order is not a final judgment on the merits. These federal decisions, including by other Judges of this Court, do have precedential weight, unlike *Hollocks*.

### D. Plaintiffs Make No Attempt To Argue That the Rule of *Adolph v. Uber* Escapes FAA Preemption.

As conspicuously argued by Tesla in its moving papers, the FAA preempts the rule announced in *Adolph v. Uber Tech, Inc.*, 14 Cal.5th 1104 (2023) that Plaintiffs seek to rely on to avoid dismissal of their non-individual PAGA claims. Motion at 22:26-23:23. The Opposition does not even try to rebut Tesla's preemption argument, instead expending four pages rehashing the *Adolph* decision. If the Court is inclined to find any waiver it is here, where the Opposition ignores a preemption argument expressly raised in the Motion.

### E. If Plaintiffs' PAGA Action is Not Dismissed, the FAA Requires a Stay.

Although the *Adolph* court noted that under state law trial courts have discretion whether to issue a stay pursuant to Section 1281.4, granting a stay of non-individual PAGA claims is required by the FAA. The FAA mandates a stay of Plaintiffs' non-individual PAGA claims because the issues giving rise to those claims are also presented in Plaintiffs' arbitrable individual PAGA claims, and *Viking River* confirms the rule that the FAA prohibits relitigating issues that were already decided in arbitration. *Viking River*, 142 S.Ct. at 1923–1925. *See Moscato v. Best Buy Stores, L.P.,* (San Francisco Superior Court, No. CGC-23-607259, Nov. 21, 2023), Supp. RJN, Ex. 20 (ordering plaintiff to arbitrate his individual PAGA claims, declining to dismiss

PAGA action consistent with *Adolph*, but ordering that "the court action is stayed until completion of arbitration under the FAA's mandatory stay provision, 9 U.S.C. 3.") Indeed, *Adolph* acknowledged that it would be impermissible to relitigate an arbitrator's finding that a plaintiff is not an "aggrieved employee." The court in *Adolph* found that its ruling did not violate this rule because a court "may exercise its discretion to stay the non-individual claims pending the outcome of the arbitration pursuant to section 1281.4 of the Code of Civil Procedure." *Id.*

*Adolph* clearly signaled that even under state law, a trial court should stay the PAGA court action. Uber had argued that failure to dismiss PAGA civil actions would violate *Viking River*'s preemption holding because the plaintiff's status as an "aggrieved employee" could be re-litigated outside of a required arbitration addressing that same question. *Id.* at 1123. To avoid this potential violation of the FAA, *Adolph* agreed that the trial court should "stay the non-individual claims pending the outcome of the arbitration pursuant to section 1281.4 of the Code of Civil Procedure." *Id*. After arbitration, the parties should then "petition the court to confirm or vacate the arbitration award under section 1285 of the Code of Civil Procedure." (*Id*.) The arbitrator's determination of the plaintiff's status would then be a final judgment that would be binding on the court addressing the non-individual PAGA claims. *Id.* Specifically, if the arbitrator determines that the plaintiff is an "aggrieved employee," then the plaintiff retains standing to continue with the non-individual PAGA claims. However, if the arbitrator determines a plaintiff "is not an aggrieved employee and the court confirms that determination and reduces it to a final judgment, the court would give effect to that finding, and [the plaintiff] could no longer prosecute his non-individual claims due to lack of standing." *Id.*[2]

Both before and after *Adolph*, courts have stayed non-individual PAGA claims pending completion of arbitration of individual claims, including in cases cited in the Opposition. *See, e.g.*, *Gregg v. Uber Techs., Inc.* (2023) 89 Cal. App. 5th 786, 806; *Jenkins v. Sterling Jewelers, Inc.*, (S.D. Cal. Feb. 16, 2018), 2018 WL 922386; *Merhi v. Lowe's Home Ctr., LLC,* (S.D. Cal. Oct. 13, 2023), 2023 WL 6498500, at *8.

---

[2] This holding effectively overrules *Gavrilloglou v. Prime Health Mgmt., Inc.*, 83 Cal. App. 5th 595 (2022), which had wrongly held that a losing plaintiff in arbitration can relitigate his or her status as an aggrieved employee in court.

Instead of confronting these on point decisions, Plaintiffs cite *Leenay v. Superior Ct.*, 81 Cal. App. 5th 533, 572 (2022), which is readily distinguishable. *Leenay* involved a plaintiff who had not been compelled to arbitration and whose PAGA action was coordinated with other PAGA cases filed against the defendant where the plaintiffs had also not been ordered to arbitration. The trial court granted the defendant's motion to stay the coordinated actions pending resolution of fifty individual arbitrations filed by other employees who were not plaintiffs in the coordinated actions. The appellate court held that because the plaintiff was not a party to any of the arbitrations, and had not been ordered to arbitrate her claims, the trial court erred by staying her action. That ruling has no bearing on a situation like here where the Plaintiffs must themselves be compelled to arbitrate their individual claims.

Plaintiffs also cite *Gavrilloglou v. Prime Health*, to argue that the arbitrator's findings on their individual claims would not have preclusive effect and those claims could therefore be relitigated in Court. Opposition, 24:6-12. As noted above, this holding is contrary to *Adolph* and it was rejected in *Rocha v. U-Haul Co.*, 88 Cal. App. 5th 65 (2023). The *Gavriiloglou* court was also clearly wrong given *Viking River* and *Adolph* to opine that the U.S. Supreme Court's recognition of an individual PAGA claim was "mere wordplay." 83 Cal. App. 5th at 605.

## IV. CONCLUSION

For the reasons stated above and in its moving papers, Tesla respectfully requests that the Court grant its Motion, compel Plaintiffs to arbitrate their individual claims, dismiss the class claims, and dismiss, or in the alternative stay, the non-individual PAGA claims.

Dated: November 21, 2023

MORGAN, LEWIS & BOCKIUS LLP

By *\/s/ John S. Battenfeld*
John S. Battenfeld
Tuyet T. Nguyen Lu
J.P. Schreiber

Attorneys for Defendant
TESLA, INC.