UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIJAH BAER, ET AL.,** | Case No. 4:23-CV-02274-YGR |
| Plaintiffs, | **ORDER GRANTING MOTION OF TESLA, INC. TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY INDIVIDUAL NON-PAGA CLAIMS** |
| v. | |
| **TESLA MOTORS, INC., A CALIFORNIA CORPORATION, AND DOES 1 THROUGH 10, INCLUSIVE,** | Re: Dkt. No. 54. |
| Defendants. | |

This Court previously granted defendant Tesla, Inc.'s motion to compel arbitration as to all but two plaintiffs. (Dkt. No. 49, Order Granting in Part Motion to Compel Arbitration ("First Order").) In so doing, the Court provided defendant additional time to submit further documentation evidencing binding arbitration agreements signed by the remaining two plaintiffs, Shontae and Sienna Stephens ("the Staffmark plaintiffs"). Tesla thus submits the instant motion and requests that the Court, based on further documentation provided, grant its motion to treat the Staffmark plaintiffs as it did the others. Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Motion to compel arbitration.[1]

### I.   BACKGROUND

The Court presumes the parties' familiarity with the basic facts giving rise to this case. In the First Order, the Court analyzed the Staffmark plaintiffs' ostensible binding arbitration agreement separately from those of the other plaintiffs. The Staffmark plaintiffs were technically not employees of defendant. Rather, they worked for a third-party called Staffmark, and were assigned employment duties at Tesla under contract. According to Tesla, the Staffmark plaintiffs signed a non-disclosure agreement ("an NDA") with Tesla which included an arbitration provision,

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.

but plaintiffs contest the authenticity of those signatures. The first motion to compel arbitration contained only the signature pages of those NDAs along with wet signatures that Tesla claimed evidenced consent to the NDA's contents. In its First Order, the Court stated:

> . . . the record is incomplete. The parties have not provided the Court with complete copies of the agreement the Staffmark plaintiffs signed. Thus, the Court is unable to determine whether a commitment to arbitrate was such an express condition of employment or agreed upon by the Staffmark plaintiffs' direct employer. Because plaintiffs have raised genuine questions around the purported signature of the NDAs, the Court does not find, based on the record before it, that a valid arbitration agreement existed between these parties.

(First Order at 10.) However, the Court's denial of the motion with regard to the Staffmark plaintiffs was "without prejudice to the submission of further evidence which would answer the Court's questions." (*Id.* at 11.)

Tesla moves this Court again, restating its arguments about the NDA's validity but also providing evidence of Staffmark plaintiffs' agreements with their direct employer, Staffmark (the "Staffmark agreements"). Tesla asserts that the arbitration agreement is binding as between itself and these plaintiffs under language in those agreements.

## II. LEGAL STANDARD

Agreements to arbitrate are valid and enforceable under the Federal Arbitration Act. *See* 9 U.S.C. § 2. Moreover, the Supreme Court has interpreted the Federal Arbitration Act ("FAA") to allow for the invalidation of arbitration provisions "by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

In deciding whether a valid arbitration agreement exists, the "the party seeking to compel arbitration[] has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio, Inc.,* 771 F.3d 559, 565 (9th Cir. 2014.) Moreover, "in interpreting arbitration agreements . . . courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Cape Flattery Ltd. v. Titan Mar., LLC,* 647 F.3d 914, 920 (9th Cir. 2011) (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944

(1995).) Thus, the Court applies California law in interpreting the specific provisions of the contracts at issue here.

### III. ANALYSIS

#### A. The Existence of an Enforceable Agreement

Plaintiffs offer three reasons why the Staffmark agreements are not binding arbitration agreements. The Court addresses each in turn.

##### 1. *The Existence of a Valid Agreement*

First, the Staffmark plaintiffs claim they did not sign the Staffmark agreements and that as such, they are entitled to a jury trial on the issue of contract formation. The Court is not convinced.

As the First Order noted, evidence that a company's electronic procedures are crafted such that an electronic signature could only have come from the alleged signatory is sufficient to demonstrate the existence of an agreement. (*See* First Order at 9-10.) Plaintiffs are thus incorrect in arguing that the:

> operative question here is not whether Staffmark had a legally cognizable system for eliciting electronic signatures, but rather, whether Plaintiffs were the persons who transmitted the electronic signatures in this instance.

(Dkt. No. 57, Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings ("Oppo.") at 6.) Where the former offers strong evidence that the latter must be true, the actual operative question is satisfactorily answered: namely, whether Tesla has shown by a preponderance of the evidence that a binding agreement existed.

This is the case here. Tesla offers essentially the same evidence the Court found sufficient in its First Order. Tesla support its motion with copies of the signed agreement and a sworn declaration from Staffmark Chief of People Suzanne Perry (Dkt. No. 54-2, Declaration of Suzanne Perry ("Perry Decl.").) Perry details how the Staffmark plaintiffs were sent a hyperlink to complete their onboarding process upon hiring before being required to log in using a unique username and password (the latter of which "was not viewable . . . on any . . . Staffmark computer system"). (*See generally,* Perry Decl. ¶¶ 7-29.) The declaration further relies on IP addresses obtained by third-party vendor Equifax, Inc., as well as computer access history log documentation to confirm that the Staffmark plaintiffs did indeed sign the agreements. As with the First Order, this is sufficient to

allow the Court to find "that Tesla has demonstrated by a preponderance of the evidence that the signatures are authentic." (First Order at 10.)[2]

Plaintiffs' contrary arguments do not persuade. First, plaintiffs' cases are distinguishable: in one, the employer was unable to identify internal confirmation of the alleged signature, and in another, the plaintiff "disputed the reliability of the employer's electronic protocols by showing another employee was in a credible position to enter the plaintiff's signature in the system." (Oppo. at 5.) Neither barrier to confirming the agreements' existence is present here. Defendants finally rely on *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal.App.4th 836 (2014), a case this Court distinguished in its First Order on largely identical grounds. (*See* First Order at 9-10.)

Finally, plaintiffs argue that the agreements themselves contain only the Staffmark plaintiffs' initials, and not full signatures. As defendant notes, part of plaintiffs' onboarding paperwork included a statement that said: "You will be asked to provide your signature electronically on the required forms and documents by placing your initials in a box where indicated." (Perry Decl., Ex. E-F.) Plaintiffs place weight on the agreement's wording, which states: "By initialing the box below, I certify that I have read the above information, and I agree to the conditions of hiring." (*Id.,* Ex. G.) Plaintiffs argue the initials therefore represent mere acknowledgement of the binding arbitration provisions, but that such terms were not actual "conditions of hiring." The Court declines to grant this tortured reading of an agreement that is patently clear on its face.

---

[2] Plaintiffs assert that "none of the information presented in the Perry Declaration or attached exhibits can support the authenticity of the proffered signatures against the possibility that unknown Staffmark employees inputted the signatures, as Plaintiffs' denials suggest." (Oppo. at 6-7.) The Court, however, finds significance in Perry's statement that: "No one at Staffmark had access to an applicant's personalized password once the applicant changed the password from the original default password. Only the applicant had access to his or her personalized password." (Perry Decl. ¶ 16.) Additionally, plaintiffs raise several evidentiary issues with the declaration, arguing in substance that Perry can only speak to how Staffmark systems are designed, but cannot and did not share "personal knowledge that the electronic protocols were, in fact, followed with respect to Plaintiffs." (Dkt. No. 57-1, Plaintiffs' objection to evidence at 3.) At this stage, Tesla only needs to show by a preponderance of the evidence that the signatures are authentic, and Perry's declaration is sufficient to do so. To require personal knowledge that the procedures were followed runs the risk of forcing Tesla to disprove a negative (i.e. to show that *no possible* unusual occurrence took place), which would impermissibly raise Tesla's evidentiary burden at this stage.

#### 2. Tesla's status as non-signatory

Plaintiffs next argue that even if the agreements exist, they are unenforceable as against Tesla, a non-signatory. The agreement states:

> This Agreement is also intended to apply to any Employment Claims the Employee may have against the Company's current or former officers, directors, employees, agents, or **customers** . . . .

(*Id.*; emphasis supplied.) Plaintiffs argue that Tesla does not qualify as a customer under the agreement, because under state law, "to invoke the third-party beneficiary exception, a non-signatory to an arbitration agreement must show that the arbitration clause of the agreement was made expressly for their benefit." (Oppo. at 10.) They further argue that the term is placed amidst a list of individuals, and thus in context, "[t]he positioning here of the term "customers" indicates that the term applies to individuals, not entities." (*Id.* at 11.)

Plaintiffs ask the Court to read the contract in illogical ways. Staffmark is "a temporary services agency" whose entire business model is "plac[ing] temporary employees at worksites of its customers." (Perry Decl. ¶ 6.) In the context of a Staffmark-drafted agreement, the word "customer" most logically refers to the companies with whom Staffmark contracts, and in the context of an agreement to arbitrate employment-related disputes, the inference that the word would mean anything else nearly strains credulity. The Court will not depart from its obligation under state law to ensure that the "words of a contract are to be understood in their ordinary and popular sense." Cal. Civ. Code § 1644.[3]

#### 3. Unconscionability

Finally, plaintiffs assert that the agreements are unenforceable as unconscionable. As with the agreements considered in the First Order, plaintiffs argue the Staffmark agreements are "permeated with unconscionability, which cannot be ameliorated through severance and thus, cannot be enforced." (Oppo. at 13.) The Court does not find the agreement is so riddled with unconscionable terms as to render the entire agreement unenforceable. Nor is plaintiffs' argument about severance convincing. Plaintiffs argue that severing any unconscionable terms would

---

[3] Because the Court finds that the Staffmark agreements facially bind plaintiffs and Tesla, it does not consider the additional equitable estoppel arguments.

"function to condone an illegal scheme." (Oppo. at 14 (quoting *Ramirez v. Charter Commc'ns, Inc.*, 2024 WL 3405593, at *19 (Cal. July 15, 2024).) As defendants note, the provision animating this contention waives signatories' right to appeal, not to wholesale judicial review.

Thus, the Court does not find the Staffmark agreements unenforceable as unconscionable.

### B. Waiver of Class Claims

Plaintiffs finally argue that the agreement does not mandate the dismissal of the Staffmark plaintiffs' class claims. Citing the agreement's text, plaintiffs assert that the agreement "merely addresses what happens in arbitration, ***not what happens in Court***." (Oppo. at 18 (emphasis in original).) Because the agreement references arbitration, but makes no explicit reference to a court, plaintiffs argue that the "agreements do not contain any requirement that claims must be adjudicated only on an individual basis in the ***judicial forum***, and they do not contain any waiver of class actions in the ***judicial forum***." (*Id.* at 17 (emphasis in original).)

Section 2.4 of the agreement, which plaintiffs cite in their opposition, states that "that no form of class, collective, or representative action shall be maintained without the mutual consent of the parties." (Perry Decl., Ex. G.) Permitting class claims to proceed would thus violate the direct text of this section, as those would be, by definition, "a *form* of class, collective, or representative action." (*Id.* (emphasis added).)

The Court overrules the objection to dismissal of the Staffmark plaintiffs' class claims.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** defendants' motion to compel arbitration with regard to plaintiffs Shontae Stephens and Sienna Stephens' claims, dismiss plaintiffs Shontae Stephens and Sienna Stephens' class claims, and stay the non-individual PAGA claims.

This terminates Docket No. 54.

**IT IS SO ORDERED**.

Date: August 1, 2024

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE